## ESCHMANN v. ATKINSON.

(Supreme Court, Appellate Term.   December 23, 1904.)

1. LANDLORD AND TENANT—CONSTRUCTIVE EVICTION—EVIDENCE—SUFFICIENCY.
   In an action for rent of an apartment, evidence *held* sufficient to warrant a finding that defendant was evicted by the sudden and arbitrary exclusion of his servant from the use of the elevator.

Appeal from Municipal Court, Borough of Manhattan, Twelfth District.

Action by Frederick W. R. Eschmann against Jerome J. Atkinson. From a judgment for defendant, plaintiff appeals.   Affirmed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

M. F. Kelly, for appellant.
Arthur L. Sherer, for respondent.

MacLEAN, J.   Claiming rent under a lease of an apartment on the fourth floor after departure of tenant, who left because as he says his colored servant was not allowed use of the elevator, the plaintiff's agent testified that her exclusion was under a rule both reasonable and of long standing, a regulation not expressed in the lease or posted anywhere, but which was to be learned by experience.   In this case the agent was supported by the janitor of the period involved.   Two elevator boys of the same period testified, however, that they never had heard of such a rule, excepting as to the plaintiff's servant, whom and whom alone they had been instructed to exclude.   The plausibility and probability of the testimony given by the plaintiff's witnesses are obvious enough.   Nevertheless the jury, if content to take the testimony of the discharged elevator boys, might find under the charge, to which no exception was taken, that the defendant was evicted by the sudden and arbitrary restriction of the use of the device apparently offered him, on his hiring, as an appurtenant convenience incident to the premises demised him.   Doyle v. Lord, 64 N. Y. 432, 21 Am. Rep. 629.   This judgment should be affirmed.

Judgment appealed from affirmed, with costs.   All concur.

---

(46 Misc. Rep. 72)

### REILLY v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term.   December 23, 1904.)

1. CARRIERS—ASSAULT BY SERVANT—PASSENGERS—TERMINATION OF RELATION.
   Where a passenger on a street car was refused change by the conductor, and, after voluntarily dismounting from the car and awaiting the conductor on his return trip, spoke to him in an office of the street railway company to which he had gone, and was there assaulted by him, the company was not liable for the assault, inasmuch as the relation of passenger and carrier had ceased, and the conductor was not at the time in the performance of his duty.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Elizabeth Reilly against the New York City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Henry W. Goddard and William E. Weaver, for appellant.

Hyland Zabriskie, for respondent.

FREEDMAN, P. J. The complaint in this action alleges, in substance, that on June 17, 1904, the plaintiff was a passenger on one of the defendant's cars, and gave the conductor a $1 bill for the purpose of paying two fares; that, the conductor failing to give her the 90 cents due her after repeated requests for the same, the plaintiff complained to one of the officials of the defendant, whereupon the conductor "violently assaulted, struck, and beat the plaintiff," causing the injuries for which she claims damages. The facts leading up to the alleged assault upon the plaintiff by the conductor are practically undisputed. The plaintiff boarded the car of the defendant at the corner of Charlton and Hudson streets, her destination being Fifty-Second street and Eighth avenue. She gave the conductor a $1 bill, requesting him to take out 10 cents—the fare for herself and her daughter, who accompanied her. She testifies that he failed to give her back any money, and, after repeated requests therefor, she says:

"Still I kept asking him all along for the change until we got up to Fiftieth street, when I thought it was my duty to get out and go into the office and complain of him."

She further says that the car stopped at Fiftieth street, and the conductor got off, as did also the plaintiff and her daughter. The conductor went into a small office, and soon after came out, and got upon the car, which continued upon its trip. The plaintiff then testified as follows:

"I said to him [the starter]: 'Don't let that man go on the car. He owes me ninety cents.' And he didn't pay me no attention. He went right along, and shoved him right along, and the car went to Harlem, he told me. I said: 'Why did you let that man get on the car without giving me my change?' I said, 'I will have to look to you for it.' He said, 'In about an hour the car will come back, and, if you wait, you will get your change.' I said: 'That's a very long time for me to have to stand here.' Still I did it—myself and my daughter. It was long I asked the starter, was he fooling me? He said, 'No; it will be back directly.' Sure enough it did come back. The minute it come back, he jumped from the car and went into the small office." Q. That is on the ground floor? A. Yes, sir. Q. You mean the conductor went there? A. The conductor—the man that hit me; and I followed him right in, and I tapped him on the shoulder, and I said: 'When are you going to give me my ninety cents?' He wouldn't pay any attention to me. I said: 'I must have my change. I won't go home until I get it.' He didn't seem to want to notice me. The young man over there said something. I couldn't gather what he said. Q. Whom did he say it to? A. To the conductor; and then the conductor, after that time, he talked. He says: 'Well,' he says, 'I have met the like of you before.' But he says (the young man that was in the office), 'How much money had you when you got on the car?' And he hemmed and hemmed, but I heard him say two dollars. He might have said more. Q. This young man asked the conductor how much he had? A. Yes. 'I suppose,' he said, 'I will have to give it to you.' He said: 'It isn't your money. It is my money. It isn't yours, but I suppose I will give it to you. I have met the like of you before.' But he gave

me the money.   Q. Gave you ninety cents?   A. Yes, sir; and then I turned like to go out, and he gave me a terrible smash. You can look—"

The conductor denied the assault, but, as the court below found in favor of the plaintiff, her version of the occurrence must be taken as true.

This judgment is sought to be sustained upon the theory that the relation of carrier and passenger still existed between the plaintiff and the defendant at the time of the alleged assault, and that the passenger received the injuries from the misconduct of one of the servants of the defendant while engaged in performing a duty which a carrier owes to its passengers. We think that upon neither ground can it be upheld. Possibly the case holding the carrier to the strictest accountability to its passengers, among all that line of cases, is that of Stewart v. Brooklyn & Crosstown R. Co., 90 N. Y. 588, 43 Am. Rep. 185. In this and other similar cases the rule is laid down, as said in Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 126, 24 N. E. 319, 322, 8 L. R. A. 224, 17 Am. St. Rep. 611:

"No matter what the motive is which incites the servant of the carrier to commit an unlawful or improper act toward the passenger, the carrier is liable for the act and its legitimate and natural consequences."

The relation of carrier and passenger must, however, continue to exist. In the case at bar the plaintiff, of her own volition, left the car at Fiftieth street for the purpose of making a complaint against the conductor. Although her destination was Fifty-Second street, she knew that by leaving the car she terminated her journey. At any rate, it must be conceded that as soon as she did leave the car the defendant was under no obligation to carry her further without entering another car and paying another fare, thereby restoring the severed relation of carrier and passenger. There is a plain distinction between a railroad company running a train of cars, from which a passenger alights at some point on his journey, and enters a room for the purpose of obtaining refreshments or to await the further continuance of the train, and is there assaulted and injured by an employé of the company, and a street car company, running only one car at a time, and whose passengers must continue thereon until the point of their destination is reached, and who, therefore, unless by transfer asked for and given, relinquish the right of further transportation as soon as they leave the car. That a passenger on a street car, who voluntarily leaves it at any point before he arrives at his first intended destination, does so without any existing right to be again taken up and carried forward unless he again pays a fare, and again resumes the relation of passenger and carrier, except one who is entitled to or receives a transfer, is a fact of common knowledge, and one of which the court may take judicial notice. It is said that the plaintiff remained upon the ground or property of the defendant at the request of one of its employés. Such employé is not shown to have authority to extend such an invitation, and, if such authority existed, it is clear that the plaintiff could not still be regarded as a passenger. Here the plaintiff remained until the conductor returned from the end of his run, and the office into which she followed him was not a waiting room or room for passengers. Nor was she while there engaged in making any complaint to any officer

of the defendant whose duty it was to receive and investigate complaints made against the company's employés. The plaintiff was merely continuing the controversy previously had with the conductor upon the car. The relation of carrier and passenger had ended long before this. Nor was the conductor acting as such when he committed the assault. He was not engaged in any of the duties pertaining to his employment. His trip had ended, his duties as conductor had ceased, he was upon no car, and his improper act was not committed while engaged in the performance of any duty the defendant owed to a passenger, or within the scope of his employment.

The facts, assuming the plaintiff's testimony to be true, show an unjustifiable assault committed upon the person of the plaintiff, for which the defendant cannot be held liable, and for a cause of action for which the Municipal Court has no jurisdiction.

Judgment reversed, with costs. All concur.