PENNSYLVANIA R. CO. v. KELLY.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 134.

MASTER AND SERVANT (§ 301*)—MISCONDUCT OF SERVANT—INJURIES TO THIRD PERSONS—SPECIAL POLICE OFFICER.

The New York City charter authorizes the police commissioner to appoint special patrolmen for special duty at any place in the city, the applicant paying for such services in advance, and declares that such special patrolmen shall be subject to the orders of the chief of police, shall obey the rules and regulations of the police department of the city, and conform to the general discipline and such special regulations as shall be made, and shall possess all the powers and discharge all the duties of the police force applicable to regular patrolmen. *Held* that, where a special policeman was assigned to duty on defendant's pier to regulate traffic, and committed an unprovoked and unjustifiable assault on plaintiff in a public street leading to the pier, the fact that defendant paid the patrolman's

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

wages for keeping order on its premises did not render it liable for the assault.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1212; Dec. Dig. § 301.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by John Kelly against the Pennsylvania Railroad Company. Judgment for plaintiff on a verdict in his favor of $730.50, and defendant brings error. Reversed.

Robinson, Biddle & Benedict (Norman B. Beecher, of counsel), for plaintiff in error.

House, Grossman & Vorhaus (Louis J. Vorhaus and Charles Goldzier, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. On the morning of November 9, 1906, the plaintiff, who was a truckman and piano mover, started with a two horse team and two helpers to the pier of the defendant at the foot of West Thirty-Seventh street, New York, to receive and move a Tiffany grand piano. When the plaintiff, who was driving, reached the foot of the street Michael Gunn, a policeman of the city of New York assigned to special duty on the defendant's pier and paid by the defendant, raised his hand as a warning signal to the plaintiff to halt. This he did not do immediately and an altercation arose which culminated in his receiving a severe blow from the policeman's club which caused the injuries complained of.

The version of the occurrence given by Gunn is to the effect that the plaintiff was contumacious and insulting and that the blow was struck to prevent an assault by the plaintiff and his companions. It is, of course, unnecessary for us to consider the question of fact thus presented. The basic question is, should the court have submitted the facts to the jury, and, in such circumstances, the plaintiff is entitled to the most favorable view of the testimony.

The complaint alleges that on the day in question, "The defendant had in its employ as a special officer, one Michael Gunn, whose duty it was as such special officer, to regulate the traffic on the defendant's pier at the foot of West Thirty-Seventh street." This appointment was made pursuant to the provisions of the city's charter which provides, in substance, that, when the necessity therefor is shown, the police commissioner may appoint and swear in any number of special patrolmen to do special duty at any place in the city, the applicant paying for such services in advance. Such special patrolmen shall be subject to the orders of the chief of police, shall obey the rules and regulations of the police department of the city and conform to the general discipline and such special regulations as may be made. They shall "possess all the powers and discharge all the duties of the police force, applicable to regular patrolmen."

In short, for the purposes of this controversy, it may be stated that Gunn possessed all the powers of a regular patrolman. His salary

was, it is true, paid by the defendant for special services upon its pier but any act which a regular officer could do lawfully, Gunn could do. The converse of this proposition is also true. An act unlawful for the regular was unlawful for him, he had no immunity not possessed by the ordinary officer.

The question, then, for us to determine may be stated as follows: Is a corporation which pays for the services of a policeman to guard its property and preserve order upon its premises liable for an unprovoked and wholly unjustifiable assault committed by him upon a public street? We are constrained to answer this question in the negative.

The witnesses all agree as to location of the assault. It was not on the pier but at the foot of West Thirty-Seventh street at least 50 feet from the entrance to the pier. We may take judicial notice of the fact that West Thirty-Seventh street is a public highway in no way under private control and that it is the duty of police officers to control the movement of teams and regulate traffic at the point in question. The testimony of the plaintiff indicates that he was doing nothing unlawful or unusual at the time in question. He says he was proceeding towards the pier when he received the signal to stop. He immediately reined in his team but because he did not stop soon enough Gunn drew his club, jumped upon the wagon and dealt him a blow which rendered him unconscious.

To hold the person who pays a policeman's wages for keeping order upon his premises liable for such a malicious assault as this, committed upon a public highway, goes far beyond the doctrine of any well considered case with which we are familiar. If the plaintiff tells the truth there was no justification for the brutal assault made upon him but the defendant has done no act of omission or commission which renders it liable therefor.

The judgment is reversed with costs.