ELMER MURPHY, Respondent, v. SOUTHWEST
MISSOURI RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, February 3, 1913.

1. ASSAULT AND BATTERY: Damages for: Scope of Employ-
ment. When an assault occurs, if the person who commits the
assault (when an employee as well as an officer of the law)
acts within the scope of his employment and under instruc-
tions of his employer, any wrongful act in his conduct is charge-
able to the employer.

2. ———: ———: Respondeat Superior. If the act done was
within the scope of the duty imposed upon the employee by
the employer by his contract of service, the principle, "res-
pondeat superior," applies.

3. INSTRUCTIONS: Harmless Error. An instruction which is
predicated on the facts with a direction to find for or against
a party must recite all the controverted or disputed facts es-
sential to a recovery. But where there is no dispute about the
facts on a necessary issue or where one of the necessary is-
sues is admitted by the adversary, it is not reversable error for
the court to assume such fact.

4. ———: Assuming Facts in Instructions. The capacity in which
Coates was acting at the time of the assault being put in issue
by the evidence, the trial court properly refused an instruc-
tion requested by the appellant which assumed that Coates
was acting merely as a deputy sheriff and not within the scope
of his authority as an employee of the appellant.

Appeal from Jasper Circuit Court, Division Number
One.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*McReynolds* and *Halliburton* for appellant.

1. When a police officer is assigned to special duty
in connection with the operation of street cars or
pleasure resorts, although he is appointed and assign-
ed at the request of the company, and is paid by the
company, where he acts solely in his capacity as a
police officer and not under the direction of the com-

pany, the company is not responsible for wrongs committed by him. He is presumed to act in his official capacity and before the company can be held liable for his acts in arresting a party and for assault and battery in making such arrest, it must be shown that the arrest and assault were at the instigation or direction of the company. Brill v. Eddy, 115 Mo. 604; 2 Woods' Railway Law, 1212; Improvement Co. v. Steinmeier, 20 Atl. 188; Jardine v. Cornell, 14 Atl. 590; Foster v. Railroad, 140 Mich. 689, 104 N. W. 200. 2. When a disorderly person is arrested by a police officer, the presumption is that the officer is acting in an official capacity, and not as agent for the party who by law is required to pay him. Jardine v. Cornell, 50 N. J. L. 485, 14 Atl. 590.

*Clay* and *Davis* for respondent.

1. It was a question of fact for the jury, and not a question of law for the court, to determine whether Coates at the time he took charge of and assaulted plaintiff, was acting as the servant of defendant, under express or implied authority, or whether he was acting in his official capacity of deputy sheriff. Sharp v. Railroad, 76 N. E. 923; Brill v. Eddy, 115 Mo. 596; Deck v. Railroad, 59 Atl. 650; 108 Am. St. Rep. 399; Improvement Co. v. Steinmeier, 20 Atl. 313, 8 L. R. A. 846. 2. It suffices that the officer in the employment of a private person or corporation had implied authority or direction from the employer to do the act. In other words, if the act done was within the scope of the duty imposed upon him in favor of the employer by his contract of service, the principle of *respondeat superior* applies. McLain v. Railroad, 65 W. Va. 233, 64 S. E. 18.

STATEMENT.—This action was brought by Elmer Murphy against the appellant in the circuit court of

Jasper county, the petition alleging that the defendant by its employee, W. L. Coates, assaulted the respondent at Lakeside Park, a pleasure resort in Jasper county owned and controlled by the appellant. Respondent prayed for actual damages in the sum of two thousand dollars and punitive damages in the sum of five thousand dollars. The case was tried by a jury and resulted in a verdict and judgment in favor of the respondent in the sum of one hundred dollars, from which the defendant appealed to this court alleging error in the action of the trial court in the giving and refusal of instructions.

It is intimated in the brief of appellant and was admitted in open court here during the course of the argument that the jury was justified in finding there was excessive force used by W. L. Coates in ejecting respondent from the park.

The facts are substantially as follows:

Appellant railway company operates this pleasure resort where there is a body of water, boats, baseball grounds, and other concessions usually found in such a place. For the purpose of maintaining peace and order within the park and for the purpose of ejecting intoxicated persons and objectionable characters from said grounds, the railway company employed one W. L. Coates, who was instructed by the superintendent of the railway company, according to that official's testimony, "not to allow any drinking publicly on the grounds and to eject all drunk and objectionable characters." According to W. L. Coates' testimony his instructions from his employer were as shown by the following questions and answers appearing in the record: "Q. You did have general orders to arrest drunk people? A. I had orders to get them off the park. Q. And to arrest people guilty of disturbing the peace? A. Not to arrest them but to keep them off the park. If I can't talk them off or persuade them off, I put them off. That was my

duty to put them off is necessary. That was what I was employed by the street car company to do.''

The evidence shows that W. L. Coates on his own initiative and on the solicitation of the railway company's officials secured from the sheriff of Jasper county a commission as deputy sheriff, and that the only compensation he received was paid him by the railway company; that he made no reports to the sheriff, was never given any writs to serve, nor assigned any of the duties that are ordinarily performed by a deputy sheriff.

The assault occurred on Sunday, July 16, 1911. The evidence shows that respondent worked until noon that day at a mine, and that he went home, changed his clothes, took two or three drinks of whiskey, and went to the park between one and two o'clock in the afternoon in company with friends who were witnesses in this case, taking with him a pint of whiskey. This was consumed by respondent and his friends in a cornfield near the park soon after their arrival at the park. There can be no doubt from the evidence that respondent was more or less intoxicated.

It appears that while a baseball game was in progress respondent was seated in the grandstand and that in moving them one of his feet struck a spectator sitting in front of him and that several words passed between them, but on the suggestion of deputy sheriff Lamb who was nearby this altercation ceased and respondent soon afterward left the grandstand. W. L. Coates was not present and did not see this trouble. There is some evidence in the record—which is denied by respondent—to the effect that Coates did see respondent after he left the grandstand and told him that he was drunk and that he had better leave the grounds. However, there was no altercation or disturbance, and Coates went on about other business and did not at that time interfere with respondent.

After the baseball game when the crowd was coming from the ball grounds to the main part of the park and crossing a footbridge, Coates took his stand at the south end of this bridge for the purpose of preventing persons in the main part of the park from attempting to cross the bridge toward the ball grounds. While he was standing at this place some one told him there was a drunk on the bridge causing some trouble, and very soon the respondent came along. Coates testified that he then said to respondent: "Say, Buddy, I told you a while ago you better get away from the grounds. You are full. . . . I am going off the park; come and go with me and and we will get off the park without any trouble. I am getting off the park. Come on, and we will get right off together. . . . I am going; come on and we will go together. I will see that you get away without any trouble, help you away; I am going over." They walked but a short distance when trouble started, it appearing from the testimony of several witnesses who testified for the respondent that Coates knocked respondent down and beat him over the head with a leather-covered billy such as is ordinarily carried by police officers. Respondent finally was gotten on his feet, and somewhere between the place where this trouble occurred and the park gate respondent was knocked down again and beaten by Coates with the same weapon, and there is evidence that Coates kicked him while down. After reaching the gate, further trouble started, and there is testimony that Coates knocked respondent down several times and beat him over the head and in the face. At this juncture one of defendant's employees came to Coates' aid and they together by pushing and pulling managed to get respondent down to a little holdover which is maintained there by the company for the temporary retention of objectionable characters. On the way from the gate to the holdover it appears that respondent was

swearing and resisting, and that he either fell in or was pushed in a mudhole. Respondent was soon after taken to Webb City by the constable of Mineral township in which Lakeside Park is located, and incarcerated, and the next morning pleaded guilty before a justice of the peace to a charge of disturbing the peace of the neighborhood of the vicinity of Lakeside Park by making loud and unusual noise, by quarreling, threatening, challenging and offering to fight and by fighting.

There is no question but that respondent was severely treated and that excessive force was used in taking him from the park and putting him in the holdover; but, as stated, this is practically conceded by the appellant.

The appellant contends in this court that the acts of Coates were those of an officer of the law, and not acts for which appellant can be held liable as his employer.

## OPINION.

FARRINGTON, J. (after stating the facts).— The authorities cited by both appellant and respondent agree in holding that an amusement company, railway company, or any person or persons engaged in handling the public at their places of business have a right to employ servants to maintain order and protect their property and eject objectionable characters; this person so employed may or may not be a regularly commissioned officer of the law; and the mere fact that such person is paid by the defendant would not, standing alone, make the defendant responsible. [Brill v. Eddy, 115 Mo. 596, 605, 22 S. W. 488; Sharp v. Erie R. Co., 76 N. E. (N. Y.) 923; Deck v. Baltimore & O. R. Co., 59 Atl. (Md.) 650; Tolchester Beach Improvement Co. v. Steinmeier, 8 L. R. A. (Md.) 846;

168 Mo. App. 38

Foster v. Grand Rapids Ry. Co., 104 N. W. (Mich.) 380; McKain v. Baltimore & O. R. Co., 64 S. E. (W. Va.) 18, 23 L. R. A. (N. S.) 289; Healey v. Lathrop, 50 N. E. (Mass.) 540; Cordner v. Boston & M. R. Co., 57 Atl. (N. H.) 234; Tucker v. Erie Ry. Co., 54 Atl. (N. J.) 557; Pennsylvania R. Co. v. Kelly, 177 Fed. 189.] The authorities further agree that when an assault occurs, if the person (when an employee as well as an officer) acts within the scope of his employment and under instructions either express or implied, general or special, of his employer, then any wrongful act in his conduct is chargeable to the employer. If his act, on the other hand, does not fall within the scope of his employment and is without direction of his employer, then of course his conduct is not chargeable to his employer. In this case, the plaintiff by his instructions assumes that the evidence shows that Coates was acting under the direction of the railway company and that what he did was within the line of his duty as such employee. The defendant by its instructions assumed the very opposite, namely, that under the state of facts presented Coates was acting without the scope of his authority and as a deputy sheriff, for which the company would not be responsible.

The instructions which were requested by the defendant and refused by the court we think were properly refused because of the failure of the defendant to predicate them on the facts and the law as above indicated. The giving of any one of the instructions requested by the defendant would practically have amounted to a directed verdict as they ignore entirely the material question in the case—whether the act was done by Coates while acting within the scope of his authority and under the direction of the defendant. Exactly the same omission was made by the respondent in drawing his instructions as he entirely ignores the fact that Coates might have been acting

as a deputy sheriff, and assumes in his instructions that Coates was acting as defendant's servant; and there is no doubt that the instructions of the respondent would be erroneous for a failure to permit the jury to pass on the question as to whether the act was done within the scope of his employment and under the direction of the company but for another consideration. There is no question but that in an instruction which is predicated on the facts with a direction to find for or against a party, all the disputed or controverted issues necessary to a recovery must be recited in the instruction. However, where one of the necessary issues is admitted by the adversary, or where there is no dispute about the facts on a necessary issue, then, while it is better that the finding be put in the instruction, yet the court may assume such fact without committing reversible error. In other words, it would have been better to have instructed the jury that if they found that Coates was an employee of the defendant company, and if they found that what he did came within the scope of his authority and under the direction of the defendant, and that Coates, acting as such employee, attempted to eject plaintiff from said park— etc. However, as all the evidence shows without any contradiction that Coates was an employee of the defendant company, that he had general instructions to eject objectionable characters and intoxicated persons from the park, and that what he did was within the scope of his authority, the trial court could assume in the instruction such a state of facts without requiring the jury to so find.

From the very language which was used by Coates at the time he took charge of respondent at the bridge it will be clearly seen that he did not then intend to arrest the respondent but merely to escort him off the grounds; besides, there is no evidence in the record of any offense committed by respondent up to that

time which would have justified Coates in placing him under arrest; at least none had been committed in the presence of Coates. It is therefore apparent that Coates started off with the respondent, not having arrested him, not for the purpose of taking him to jail—which was all he could have done as a deputy sheriff—but for the purpose of getting him off the grounds which was within the scope of his authority as defendant's employee and which was in the line of his duty under his instructions from the railway company.

After a careful examination of this record we are convinced that the verdict and judgment were for the right party; that the jury rendered their verdict in the exercise of a sound discretion, realizing, perhaps, that respondent by going to a public park where there were women and children and becoming intoxicated and obnoxious to all about him brought down the trouble upon his own head, and gave him small compensation, yet made the verdict for a sufficient amount that persons employing special officers would understand that they are required to select men who will not become oppressive and abuse their authority. Finding no reversible error with reference to the instructions given or refused, and believing that the judgment was for the right party, it is accordingly affirmed. All concur.