## Guy W. Smith & Sons, a Corporation v. Dawson.

(Decided December 9, 1924.)

Appeal from Jefferson Circuit Court
(Common Pleas, First Division).

1. Master and Servant—Servant's Assault on Person Attempting to Identify Automobile Causing Injury Held Not Within Scope of Employment.—Where helper on truck which collided with plaintiff's automobile struck plaintiff's head with iron pipe when plaintiff attempted to ascertain number of truck, he was not acting within scope of employment, and his employer was not liable; Motor Vehicle Law, section 12, not being applicable.

2. Master and Servant—Master Liable Only for Torts of Servant Within Scope of Employment.—Master is not liable for every tort which servant commits during continuance of his employment, but only for those within real or apparent scope of master's business.

3. **Assault and Battery—Award of $1,500.00 for Blow on Head Resulting in Severe and Permanent Injuries Held Not Excessive.**—Verdict of $1,500.00 for being struck over head by iron pipe by defendant's servant, resulting in serious and permanent injuries, held not excessive.

O'NEAL & O'NEAL, DOOLAN & DOOLAN and FRED STARCK for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant, Guy W. Smith & Sons, is a Kentucky corporation and engages in the business of moving furniture and household effects by the use of moving trucks, its place of business being Louisville, Kentucky. Appellee, P. L. Dawson, sued appellant joining two causes of action in one petition. First, he sought to recover of appellant the damages done to his Ford touring car which resulted from a collision between it and one of appellant's trucks, alleged to have been caused by the negligence of the driver of the truck. He also sought to recover damages for personal injuries to himself for an assault committed upon him by one of appellant's employes. By way of defense, with reference to the injury to the automobile, appellant denied that the collision and damage was the result of its negligence or that of the driver of its truck, and affirmatively pleaded that the collision and consequent damages resulted from the negligence of appellee. With reference to the personal injury, appellant affirmatively pleaded that it was not answerable for the assault upon appellee if one of its employes assaulted him, because in so doing the employe was not acting for it or within the scope of his employment. The two causes of action were submitted to the jury in separate instructions, and, upon the issue as to damages to appellee's automobile, the jury found for appellant, but, upon the issue as to appellee's personal injuries from the assault, found for appellee a $1,500.00 verdict. Judgment was entered accordingly and hence this appeal.

It is insisted by appellant that the trial court erred in not sustaining its motion for a peremptory instruction as to the personal injury feature of the case. The pertinent facts are these: The truck owned by appellant

with which appellee's automobile collided had been engaged in moving furniture on the day in question. The empty truck was on its way back to the office of appellant. Three of appellant's servants were on the truck, the chauffeur and two helpers. They were all negroes. The truck and appellee's Ford collided and, according to the testimony of appellee, immediately after the collision he went from his machine to appellant's truck for the purpose of ascertaining the number of the truck and its owner so as to know who was responsible to him for the damage inflicted upon his automobile. The driver of the truck refused to disclose the name of the owner or number of the truck and was insulting in his remarks to appellee. An argument arose between them as to who was responsible for the collision and while the argument was in progress a crowd congregated at the scene of the collision. Appellee stated that because he was unable to get any information from the chauffeur in charge of the truck as to its owner or number, and because of the confusion that arose when the crowd collected, he left the front of the truck and, having procured a pencil and piece of paper from a friend who had come up, went to the rear end of the truck and climbed up into its body for the purpose, as he stated, of ascertaining its number so as to identify the owner. He testified that he did not know that there was anyone in the body of the truck, and that when he had proceeded about half its length he was struck down and knocked unconscious. He stated that he did not know anything for something like two days, eventually regaining consciousness in one of the hospitals of the city. He stated that he did not know who struck him. The testimony shows that a partition separated the seat used by the chauffeur and one of the helpers from the body of the truck. Witnesses for appellant who were on the street near the truck testified that when appellee had reached a point about the center of the bed of the truck he was struck with an iron pipe by one of appellant's employes who was in the body of the truck. By the time that happened, or probably before, one of appellee's friends, who had reached the scene of the collision shortly after it occurred, assaulted the negro driver of the truck by striking him on the head, and it appears that there was considerable incendiary talk among those gathered about the truck. The chauffeur of the truck, sensing danger to himself and those

with him, started the truck and drove away. At the time he did so he does not appear to have known that appellant's employe in the body of the truck had assaulted appellee. When appellee was struck with the rod of iron, as testified to, he fell as if killed, and after the truck had gone some fifty yards from the scene of the collision the negro who had assaulted him rolled his apparently lifeless body from the truck into the street. The truck with appellant's three employes proceeded immediately to appellant's office and reported the difficulty that had occurred. Appellant's employe who assaulted appellee immediately left the city and has never been apprehended.

Appellee introduced no testimony tending to establish appellant's responsibility for the assault further than that which established that the man who assaulted him was an employe of appellant and was on one of appellant's trucks at the time. Appellant established by proof that the truck was in charge of the chauffeur and that its other two employes who were present, one of whom assaulted appellee, had no duties under their employment from it other than to carry the furniture and other commodities being moved to and from the truck. It is unnecessary to detail the facts with reference to the collision between the two vehicles, it being sufficient to say that by the verdict of the jury appellee was found to be at fault and his negligence was found to be the cause of the collision and resultant damages, because the jury on that feature of the case found for appellant, and no appeal has been prosecuted. Appellant insists that under this state of facts as to the personal injury received by appellee the court should have peremptorily instructed the jury to find for it.

The rule for determining the master's liability for the acts of his servant has often been written by this court. Perhaps the following excerpt from Taylor v. Stephens, Admx., 163 Ky. 77, 174 S. W. 790, states the rule as clearly and concisely as could be done:

"The universal test of the master's liability for the acts of his servant is: Was there authority, express or implied, for doing the act? That is: Was it one done in the course and within the scope of the servant's employment? If so, the master will be

liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. However, the master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only arise when the act done is within the real or apparent scope of the master's business. Hence, when a servant steps outside of his employment to do an act for himself not connected with his master's business, no liability attaches. The reason for the rule is that beyond the scope of his employment a servant is as much a stranger to his master as a third person.''

The question has been considered in Sherley v. Billings, 8th Bush 151; C. & O. Railway Co. v. Ford, 158 Ky. 800, 166 S. W. 605; Strader's Admrs. v. Lexington Hydraulic & Mfg. Co., 146 Ky. 580, 142 S. W. 1073. Numerous other cases announcing and sustaining the doctrine above are cited in the cases referred to. Applying that rule to the facts of this case it is extremely hard to ascertain any reason for holding that when appellant's servant assaulted appellee he was in any sense of the word acting under authority from his master, either express or implied, or that the assault was done in the course and within the scope of the servant's employment. Appellee insists that a number of this court's opinions cited by him are authority for holding the master liable in this case. He cites numerous cases in which the master has been held liable for the torts of his servant, and urges the analogy of those cases to this. None of those cases varies the rule, *supra*. The facts of each of them were measured by the same rule and liability was fixed upon the master because in doing the wrong the servant was held to be acting for the master and within the scope of his employment. The act of the servant complained of was held in legal effect to be the act of the master. Hence, the master's liability.

It is not sufficient that the tort be committed while the relation of master and servant exists and at a time when the servant is engaged in the business of his master, but in addition thereto it must be made to appear that the servant committing the tortious act in so doing is acting for the master and within the scope of his employment. We are possessed of no powers of reasoning

by which under the facts of this case we can determine that in assaulting appellee appellant's servant was performing any duty owing to it within the scope of his employment. The provisions of section 12, motor vehicle laws, Acts of 1920, page 437, invoked by appellee, do not, in any particular, change the rule of law for determining whether or not a master is liable for the torts of his servant, and under the facts of this case are of no value in determining the question involved.

The evidence discloses that appellee was severely and permanently injured as a result of the assault. We are convinced that his pain and suffering was intense and that the $1,500.00 verdict awarded him is in no sense of the word excessive remuneration for his injury. However, we have been unable to view this case from any angle that permits us to say that when appellant's servant assaulted appellee he was acting for appellant or within the scope of his employment. With this view of the case, we hold that for the assault charged in plaintiff's petition the court should have sustained appellant's motion for a peremptory instruction at the close of the evidence.

For these reasons the judgment herein is reversed and this cause remanded for further proceedings consistent herewith.