Kinkade, J.
 

 J. W. Huntington brought an action against the Cleveland Railway Company in the court of common pleas at Cleveland, to recover damages for an assault and battery committed upon him by the motorman of a street car that was owned and operated by the street railway company. The jury returned a verdict in favor of Huntington for $10,000. In the trial court a
 
 remittitur
 
 of $3,000 was made by Huntington, upon the suggestion of
 
 *519
 
 the trial judge, and thereupon the motion for new trial filed by the street railway company was overruled and judgment was rendered in favor of Huntington for $7,000. Error was prosecuted to the Court of Appeals by the railway company. That court, one judge dissenting, affirmed the judgment. The street railway company prosecutes error in this court.
 

 The assault was committed near the intersection of Miles avenue, an east and west street, .and East 116th street, a north and south street. The street car in question was in charge of a conductor and motorman in the employ of the street railway company, and was proceeding easterly on the south track of the double railway tracks in the center of Miles avenue, and had stopped to let off passengers near to and west of the point of intersection of the south line of Miles avenue and the west line' of 116th street. As the street car was approaching this stop, Huntington was driving alone, in an automobile owned by him, westerly on the north side of Miles avenue, between the street car tracks and the north curb of Miles avenue, and was approaching the east line of 116th street. Before reaching this street, the automobile driven by Huntington collided with another automobile parked near the north curb of Miles avenue, and near to 116th street. According to the testimony of Huntington himself, this collision, supplemented by the bad condition of the pavement in Miles avenue at that intersection, by the further fact that the pavement was wet at that time, and by the additional fact that one of his tires then became deflated, caused him to lose control of his automobile, with the result that when
 
 *520
 
 he tried to pass the street car, as it was standing still on Miles avenne, to the west of 116th street, as stated, his automobile side-swiped the street car on its north side, and near the rear end of the car, and then, after passing to the west of the car, his automobile was deflected in its course, and moved behind the street car across the street car tracks, and came to a stop at the south curb of Miles avenue at a point not far west of the standing street car.
 

 Huntington testified that as soon as practicable after his car had thus stopped, and while the street car was still standing where it had stopped, as stated, he attempted to back his automobile to the north side of Miles avenue, so that he could there inspect it and see what damage had been caused to the car, and could proceed on his journey westerly on Miles avenue in his proper line of travel; that as his automobile was being so backed, the motorman left his place on the street car, went to the automobile of Huntington, and there assaulted him by striking him in the face while he was backing his car; and that the motorman then stopped the automobile himself, and dragged Huntington from the car, continued to beat him about the head and body in a cruel and vicious manner, and thereby inflicted serious and permanent injuries upon Huntington.
 

 In his original petition, Huntington did not aver that this assault was committed after the motorman had asked him for his name and address, nor was it stated that the assault was committed while the motorman was acting within the scope of his employment. Soon after the accident, Huntington’s deposition was taken. In that deposition he testified that prior to the assault, the motorman had said
 
 *521
 
 nothing to him, nor had he said anything to the motorman. He was very definite and positive in his statements on that subject, saying that not a word was spoken by him to the motorman, nor by the motorman to him, prior to the assault and battery.
 

 After this deposition was taken, the counsel who filed the petition for Huntington withdrew from the case. His present counsel procured leave to file an amended petition, and in the amended petition the allegation appears that the motorman first demanded his name and address, and then without giving him time to answer immediately assaulted him, as stated.
 

 On the trial, Huntington testified that the motorman first asked his name and address, and then, without giving him any opportunity to answer, immediately assaulted him. These statements of Huntington were the very opposite of what he testified in his deposition. When confronted on cross-examination with the statements in his deposition, he would not say that he did not then so testify, but did say that he could not then remember what he had said when his deposition was taken.
 

 The only proof offered by plaintiff to sustain the contention that the motorman was acting within the scope of his duty when he committed the assault was the testimony of another witness, who had been a conductor in the employ of the street railway company some years prior to the time that he was testifying, but who had not been in the employ of the company for several years prior to this trial. Over the objection and exception of counsel for the street railway company, this former employee was permitted to testify that when he worked for the com
 
 *522
 
 pany as conductor the company then required its motormen and conductors to get names and addresses of all who witnessed any accident which involved its cars. This evidence was- incompetent, and its admission was prejudicial error. However, entertaining the view we do of this case, we will dispose of the case on a broader ground.
 

 At the close of plantiff’s case in chief, and again at the close of all the evidence, counsel for the street railway company moved for a directed verdict in its favor, on the ground, among others, that there was no evidence in the case tending to show that the motorman was acting within the scope of his employment when he committed the assault. These motions were overruled and exceptions saved.
 

 Prior to the argument, the street railway company requested the court to charge the jury before argument as follows:
 

 “If you find that the plaintiff in his deposition in this case, taken the 24th day of October, 1925, testified that the motorman struck him before a word was said to him by said motorman, then you may consider such' testimony as an admission of that fact by the plaintiff.”
 

 This request was refused by the trial court, and that action of the court is assigned as prejudicial error. We cannot sustain this contention of counsel for plaintiff in error. To so charge the jury would be to say to the jury that if the plaintiff had so testified in his deposition, the jury might take that as a full and final admission of that fact, which the plaintiff could not thereafter retract or qualify even if the real fact might be otherwise. In weighing the evidence of the plaintiff, the jury had
 
 *523
 
 the right to take into account this contradiction in his testimony, and they might well have declined to believe his second story concerning what occurred before the committing of the assault. However, he had the right to file an amended petition and to testify in support of the allegations of that amended petition. The value of his whole testimony was for the jury. The trial court did not err in refusing to give this instruction as requested.
 

 This motorman was not acting within the scope of his employment even if it be considered that, in case of any accident involving the car, it was the duty of the motorman and the conductor to obtain and report to the company the names of such witnesses to the transaction as were willing to give their names and addresses. It is made perfectly clear by the evidence offered in support of the plaintiff’s case that this motorman was not trying to get the name and address of Huntington. He was enraged at the conduct of Huntington in driving his car against the street car, and he went to Huntington’s automobile for the purpose of punishing him because he had run his automobile into the car. No man who really wanted to procure the name and address of another would proceed to beat such person into an insensible condition before he gave him any chance to respond to an inquiry for his name and address. The whole story is out of accord with common sense and common knowledge of the affairs of men. Huntington had no contractual relation of any sort with the street car company. He was a total stranger to the company. He and the company were both using the same street at the same time, and were both entitled to use it. The motor
 
 *524
 
 man did not drive the street car into a collision with Huntington’s automobile. The street car was standing still. Huntington was the only party who was moving. The motorman was not employed to beat up strangers who chanced to be using the same street along which the street car moved. To hold that because the motorman had asked his name at .the same instant he struck him — and that is now Huntington’s testimony — and that the courts rniufi find that the motorman was acting within the scope of his employment in making this assault, would be to establish a far-reaching and very dangerous principle. If that be the law, then there is but little, if anything, left of the subject of limited agency.
 

 There are many hundreds of motormen and conductors employed throughout the country who are engaged every day in the transportation of millions of passengers, and have been for many years, and yet counsel for neither side have been able to discover and cite a case where there has been a recovery sustained in court on facts analogous to the facts in this case. This conrt has many times held that when the driver of an automobile in the employ of its owner turns aside from his prescribed duty, and, without the knowledge or consent of his employer, uses the automobile to serve some purpose of his own, or to accommodate some friend or acquaintance of his, and in so doing injures a third party, the master cannot be made to respond in damages to the injured party. The defense to an action of that kind is that the agent was not acting within the scope of his employment when the injury was inflicted, whether the injury arises from negligence or from a willful tort. The fact alone that
 
 *525
 
 a motorman of a street car is charged by his employer with the duty of asking for names and addresses of persons on the street and near the car when there is an accident which affects the car or its passengers and reporting the same to the company, does not impose upon the street car company a liability to respond in damages for a personal assault committed by the motorman on any such person, in connection with the performance of that duty, when the person assaulted has no contractual relation with the street car company. 2 Mechem on Agency (2d Ed.), Sections 1977, 1978;
 
 Murphey
 
 v.
 
 Philadelphia Rapid Transit Co.,
 
 30 Pa. Super. Ct., 87;
 
 Bowen
 
 v.
 
 Illinois Central Rd. Co.
 
 (C. C. A.), 136 F., 306, 70 L. R. A., 915;
 
 Farber
 
 v.
 
 Missouri Pacific Ry. Co.,
 
 116 Mo., 81, 22 S. W., 631, 20 L. R. A., 350;
 
 Pennsylvania Rd. Co.
 
 v.
 
 Kelly
 
 (C. C. A.), 177 F., 189, 30 L. R. A. (N. S.), 481;
 
 Guy W. Smith & Sons
 
 v.
 
 Dawson,
 
 206 Ky., 107, 266 S. W., 926;
 
 Valley
 
 v.
 
 Clay,
 
 151 La., 710, 92 So., 308;
 
 Zaitz v. Drake-Williams-Mount Co.,
 
 107 Neb., 262, 185 N. W., 424;
 
 Allertz
 
 v.
 
 Hankins,
 
 102 Neb., 202, 166 N. W., 608, L. R. A. 1918F, 534;
 
 Crelly
 
 v.
 
 Missouri & Kansas Telephone Co.,
 
 84 Kan., 19, 113 P., 386, 33 L. R. A. (N. S.), 328;
 
 Muller
 
 v.
 
 Hillenbrand,
 
 227 N. Y., 448, 125 N. E., 808, 8 A. L. R., 1455;
 
 Reilly
 
 v.
 
 New York City Ry. Co.,
 
 46 Misc. Rep., 72, 91 N. Y. S., 319;
 
 Porter
 
 v.
 
 C., R. I. & P. Rd. Co.,
 
 41 Iowa, 358;
 
 Williams v
 
 .
 
 Pullman Palace Car Co.,
 
 40 La. Ann., 87, 3 So., 631, 8 Am. St. Rep., 512;
 
 Candiff
 
 v.
 
 Louisville, New Orleans & Texas Ry. Co.,
 
 42 La. Ann., 477, 7 So., 601;
 
 Georgia Rd. & Banking Co.
 
 v.
 
 Wood,
 
 94 Ga., 124, 21 S. E., 288, 47 Am. St. Rep., 146;
 
 Brown
 
 v.
 
 Union Pacific Rd. Co.,
 
 111 Kan., 338, 207 P., 196;
 
 *526
 

 Brown
 
 v.
 
 Boston Ice Co.,
 
 178 Mass., 108, 59 N. E., 644, 86 Am. St. Rep., 469;
 
 Blackburn
 
 v.
 
 Williamson & Pond Creek Ry. Co.,
 
 180 Ky., 254, 202 S. W., 500;
 
 Smith
 
 v.
 
 Seaboard Air Line Ry.,
 
 18 Ga. App., 399, 89 S. E., 490;
 
 Wells-Fargo & Co. Express
 
 v.
 
 Alexander,
 
 146 Ark., 104, 225 S. W., 597;
 
 Johanson
 
 v.
 
 Pioneer Fuel Co.,
 
 72 Minn., 405, 75 N.
 
 W.,
 
 719;
 
 Ducre
 
 v.
 
 Sparrow-Kroll Lumber Co.,
 
 168 Mich., 49, 133 N. W., 938, 47 L. R. A. (N. S.), 959;
 
 Little Miami Rd. Co.
 
 v.
 
 Wetmore,
 
 19 Ohio St., 110, 2 Am. Rep., 373;
 
 Commonwealth Casualty Co.
 
 v.
 
 Headers,
 
 118 Ohio St., 429, 161 N. E., 278.
 

 The sole purpose of the filing of the amended petition was to plead the fact that the inquiry for name and address was made before the assault was begun. Even with this allegation pleaded the amended petition did not state a cause of action, and at the close of the evidence, in the trial court, the street railway company was entitled to a verdict directed in its favor, based upon the pleadings, as well as upon the failure of plaintiff to offer any evidence tending to show that the motorman was acting within the scope of his employment when the assault and battery was committed.
 

 The judgment of the lower courts will be reversed, and final judgment will be entered here in favor of the street railway company.
 

 Judgment reversed.
 

 Marshall, O. J., Day, Robinson, Jones and Matthias, JJ., concur.
 

 Allen, J., concurs in the judgment.