## Chesapeake & Ohio Railway Company v. Ford.

(Decided May 12, 1914.)

### Appeal from Floyd Circuit Court.

Master and Servant—Liability of Master for Injuries to Third Person Occasioned by Servant's Tort.—The master is liable for the wilful and malicious acts of his servant committed in the course of the employment and within the scope of the servant's authority. Where it was shown that plaintiff while walking alongside the railroad track was struck by a stream of hot water

maliciously thrown from the locomotive by those in charge thereof and thereby injured, such act not having been performed in the discharge of any duty owed by such servant to the master, the master is not liable.

WORTHINGTON, COCHRAN & BROWNING, HARKINS & HARKINS and F. T. D. WALLACE for appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

William Ford sued the Chesapeake & Ohio Railway Company in the Floyd Circuit Court to recover damages for injuries received by him, alleging that as he was walking along on the defendant company's right-of-way in a peaceable and orderly manner, and in no way interfering with the servants of the defendant company in the operation of its trains, the servants of said company in charge of one of its locomotives, unlawfully and maliciously threw upon the plaintiff hot water through a hose attached to said locomotive, thereby scalding and severely injuring him.

Upon a trial of the action, the jury returned a verdict in favor of the plaintiff in the sum of three hundred dollars; and defendant company appeals.

It is contended by appellant that the court erred in overruling its motion to instruct the jury to find a verdict for it, for the reason that the weight of the evidence shows conclusively, it is claimed, that water of sufficiently high temperature to cause the injuries claimed to have been received by the plaintiff, could not be drawn from the locomotive in such place and manner as to have made it possible for the defendant's servants to have inflicted upon the plaintiff the injuries in question in the manner testified to.

Plaintiff testified that he was part owner of a barber shop at Auxier, a mining town in Floyd County, on defendant's line of railroad; and he lived about a quarter of a mile below Auxier; that he closed his shop about 7:30 P. M. on the night of September 2, 1912, to go to his home; that he was carrying a lighted lantern, and proceeded down a side-track some little distance, and then crossed the defendant's main line about forty feet in front of a freight train which was standing on the main line preparing to start in the direction from which he had come. As he was walking alongside the track,

and just as he had passed the cab of the locomotive and had reached a point near the rear end of the tender, he was struck by a stream of water, which knocked him down. He heard some one in the cab say, "Now, damn you, keep off of there." He further testified that they continued to throw this stream of water on him after he was knocked down and while he was down; but owing to the protection afforded by a rubber coat which he had on, he was scalded only on one leg which was not covered by the coat. He said that just before he passed the cab of the locomotive, one of the train-men climbed into the cab from the ground.

Plaintiff also showed by a witness who came up to him just after the train pulled out, that said witness removed plaintiff's shoe and found his left leg severely scalded. He also proved the extent of his injury by the physician who treated the wound.

Defendant company showed by the train crew of the train which was at Auxier about 7:30 P. M. on the night of September 2, 1912, that none of them knew plaintiff or saw him at the time he claimed he was injured; that none of them threw water upon him, or knew anything at all about his being injured. It was also attempted to be shown by the train crew that water hot enough to scald a man and to produce the injuries which plaintiff showed had been received by him, could not be drawn from a locomotive in such manner or from such place as would have made it possible for any of the crew to have thrown it upon plaintiff in the manner testified to by him.

Appellant's counsel contends that upon the weight of the evidence, the court should have directed the jury to find a verdict for it. Upon the motion for peremptory instruction, however, the evidence for plaintiff is admitted to be true, as well as every inference fairly deducible therefrom; and under his evidence, if the act of throwing the hot water upon him were one for which the law afforded plaintiff a right of action against the employer of the servants who maliciously injured him, the motion would have been properly overruled.

But the real question involved upon the motion for a peremptory instruction is whether the act of the servants of the railway company in throwing the water upon the plaintiff and thereby injuring him, was committed in the course of the employment and within the scope of the authority of such servants.

1. The master is liable for the willful and malicious acts of his servants where such acts are done in the course of the employment and within the scope of the authority of such servants; but, where the servant does a willful or malicious act, while engaged in working for the master, but outside the scope of his authority, as where he steps aside to accomplish some purpose of his own, the master is not liable therefor.

In the case of Willis v. Maysville & Big Sandy Railroad, 122 Ky., 658, 29 R. 178, 92 S. W. 604, 13 Ann. Cas. 74, a boy standing in the public street in Greenup was struck by a piece of ice kicked by a brakeman from the platform of the caboose of a passing freight train. In that case, the evidence showed that it was the duty of the brakeman to keep the caboose in proper order; and the court held that he was therefore within the scope of his authority in removing the ice from the platform of the caboose where it constituted an obstruction to the use thereof by the trainmen, and where, by melting, it was likely to render the platform slippery and unsafe; and that, as the servant was acting within the scope of his authority, the plaintiff was entitled to recover.

In the case of L. & N. v. Eaden, 122 Ky. 818, 93 S. W. 7, 29 R. 365, 6 L. R. A. (N. S.) 581, the plaintiff was standing upon the right-of-way of the railroad company, and the fireman upon the locomotive of a passing train threw a shovelful of burning coals into her face. In that case, this court held that as the fireman was engaged in discharging a duty which he owed to his employer in throwing out the coals, if he had knowledge of the presence of the plaintiff by the side of the track, the company would be liable. The court said: "We do not think this case is controlled by the principle enunciated in L. & N. v. Routt, 76 S. W. 513, 25 R. 887, and Sullivan v. L. & N., 115 Ky., 447, 24 R., 2344, 74 S. W., 171, 103 A. S. R., 330. In both of these cases, it was distinctly held —and it was the turning point in the opinion—that at the time the injury complained of was inflicted, the employes were not in the exercise of any duty they owed to their employers."

In the case of Sullivan v. L. & N., *supra,* the foreman of a switching crew in the Louisville yards found a torpedo in the tool box on the locomotive. As a prank, he placed it on the track in front of the locomotive, which, passing over it, exploded it, injuring Sullivan, a member of the crew. It was conceded in that case that

the switching crew had no occasion to use torpedoes in its work, and that the use of the torpedo which caused the injury was entirely without the line of the foreman's duty. The injured switchman sued to recover damages for the injury; the lower court peremptorily instructed the jury to find for the defendant company; and upon appeal, the judgment was affirmed, this court saying: "The best-considered and most numerous authorities do not draw the line at whether the servant is using his master's property when inflicting the injury in question, but whether he is then representing the master in the act and in the scope of his employment. The reason the master is liable at all for the act of his servant is because the servant is acting in that matter in the master's stead and for him. Obviously, if the servant is not acting for the master, he cannot be said to be his representative in that act. So, if the servant is charged by the master with the authority to act in his stead in a given matter, the servant's action or his failure to act, as the case may be, is imputed to the master as if it were his own. This general doctrine is too well-known to require now the citation of authority to support it. But, where the servant steps aside from the employment, and assumes to act, and does act, solely on his own account, in a matter with which the master has no more connection than if he were the most complete stranger, it would not be logical or fair to make the master vicariously suffer for it. For in doing that act, the servant, so-called, was absolutely his own master."

In the case of L. & N. v. Routt, *supra*, it was shown that Routt was walking along a path on the right-of-way of the railroad company, when the fireman upon the locomotive of a passing train, purposely and maliciously threw a lump of coal and struck Routt and injured him. In reversing a judgment obtained by him, and denying him a recovery, this court said that it would be difficult to imagine a case where the facts more clearly showed that the servant was acting in his own behalf, and in no sense for the master. This, it seems to us, is conclusive of the case at bar.

Here, the evidence for the plaintiff shows that the throwing of the scalding water upon plaintiff was done intentionally and maliciously, and there is no evidence or claim by plaintiff that that act was performed by the company's servants in the discharge of any duty which they owed to the master.

In C. N. O. & T. P. Ry. Co. v. Rue, 142 Ky., 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200, it was said: "It goes without saying although not shown by the evidence, that the train crew had authority to eject passengers from the train or to prevent them from riding thereon, for such authority arose by implication from their being in charge of the train under the employment of appellant, the owner. A freight train, as a rule, does not carry passengers, and any person who rides thereon without the consent of those in control of it becomes a trespasser, and may for that reason be summarily ejected therefrom, without unreasonable force. But if the servants in charge of the train in removing a trespasser should use unnecessary or unreasonable force, and thereby inflict injury upon him, the master would in such case be liable for the injury, because the servant, being possessed of the authority to remove the trespasser in a proper manner, his wrongful exercise of such authority resulting in the injury, would bring the act within the scope of his employment."

And so, if the plaintiff in the case at bar had been on the freight train, or attempting to board it, and the railway company's servants in an effort to prevent his boarding the train, or in an effort to eject him after he had boarded it, had thrown the scalding water upon the plaintiff and thereby injured him, the company would be liable for such act, upon the ground that it was an act performed within the scope of the authority of the servants in question.

But, it is not shown in the record, and the court, in the absence of evidence to that effect, will not presume, that those in charge of a freight train are charged by the company with any duty of driving trespassers off of the right-of-way. Had such duty been proven, and had the servants of the company in the discharge of that duty, thrown the hot water upon the plaintiff and thereby injured him, the company would be responsible for the act.

If plaintiff had been in a place where he had a right to be, and it had been the duty of the company's servants upon the locomotive to have thrown the water, and the servants had negligently performed that duty and thereby injured plaintiff; or, if such servants in the performance of their duty had intentionally and maliciously thrown hot water upon plaintiff and thereby injured him, the company would be liable, even though

plaintiff may have been a trespasser. But there is no claim by the plaintiff that any duty was being performed by the company's servants at the time they threw the hot water upon plaintiff; in fact, all the evidence for plaintiff goes to show upon the part of such servants, a willful and deliberate departure from the course of their employment, and the performance by them intentionally and wilfully of an act wholly without the scope of their authority; and under this state of fact, the lower court erred in overruling the motion of defendant to direct the jury to find a verdict for it.

The only instruction given by the court for the plaintiff directed the jury to find for plaintiff if they believed from the evidence that plaintiff "while walking along on the right-of-way of defendant company in a peaceable and orderly manner and not interfering with the company's servants in the operation of the train, was injured by the servants of defendant company wrongfully, unlawfully and maliciously throwing hot water upon him."

If there had been evidence to authorize an instruction upon the theory that defendant company's servants were acting within the scope of their authority, and such instruction had been given, then the instruction that was given by the court would have been proper if changed so as to direct the jury to find for defendant, instead of plaintiff, if they believed as stated in this instruction.

Judgment reversed.