## Southeastern Greyhound Lines et al. v. Harden's Adm'x.

Jan. 16, 1940.

R. W. Keenon, Edward J. Hogan and W. H. Spragens for appellants.

O. B. Bertram and Abel Harding for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment for $3,000 for the death of Sam (alias "Bill") Harden as the result of an alleged malicious assault. The appellants are the Southeastern Greyhound Lines and its employee, Henry Morgan, and the Greyhound Terminal of Louisville, Incorporated, and its employee, Martin Maynard.

In the afternoon of April 19, 1937, Harden purchased a ticket from the Terminal for transportation on the bus of the Southeastern Lines from Louisville to Campbellsville, where he lived. When the bus had been driven to the loading platform he went out to board it. Harden and Morgan, the driver, had been friends for four or five years. Except for the testimony of a discredited witness, all the evidence is that Harden was drinking or drunk. He asked Morgan when the bus would leave. Their conversation quickly developed into a quarrel. The evidence introduced in behalf of the plaintiff was that without any basis therefor, Morgan had cursed Harden and refused to let him board the bus. The evidence introduced in behalf of the defendant was that Morgan had suggested to Harden that he wait until the next bus in order to sober up a little and that Harden became quarrelsome and violent and attacked Morgan. He shoved Harden away from him, knocking his cap off. The defendant proved that Morgan had not refused passage until Harden had become disorderly. Morgan went on about his business of loading express and baggage and Harden went inside to the

ticket office. He there surrendered his ticket and obtained a refund of his money. While doing this he was cursing Morgan and declaring that he would never take the bus out of the station. He had a knife in his hand and continued to abuse and threaten him. The ticket agent waiting on Harden had a call made for the police.

While this was going on Maynard, another ticket agent, left his booth to go out to the platform and warn Morgan of the man's threats. Maynard and Harden reached there about the same time. According to two discredited and impeached witnesses introduced by the plaintiff, while Harden was quietly standing with his hands at his side, Maynard walked up and struck him in his face with his fist, causing him to slump down against the wall on the floor. According to the testimony of the other participants, and of several employees and pasengers, Morgan was in the act of putting baggage in the rear of the bus, with his back toward the door from the lobby, when Harden started at him with an open knife as if to stab him in the back. Maynard, shouting "look out," knocked up Harden's arm, causing him to drop the knife, and with his right fist struck Harden in the face. There is no direct proof as to what caused Harden's death or where he died. His brother testified to having seen his body at the City Hospital with some bruised or raised places on his face. It is only by implication that it can be said that Harden died from the blow inflicted by Maynard's fist.

The plaintiff's theory is that Harden's death resulted from the joint action of Morgan and Maynard acting within the scope of their employment. The theory is untenable. Accepting as true the testimony that Morgan, the bus driver, had wrongfully refused Harden the right of passage and had wrongfully assaulted him, it is certain that the encounter had ended from ten to thirty minutes before Maynard struck Harden. Morgan had gone on about his business and Harden had surrendered his ticket and thereby terminated his relationship as a passenger. There was no intimation of any conspiracy or concert of purpose or, indeed, of any participation, actively or constructively on Morgan's part in the homicide. The plaintiff's evidence in its most favorable light does not show Morgan to have done anything. According to the defendant's evidence he was the intended victim of a drunken man's assault with a deadly weapon while he was leaning over the

baggage compartment of the bus, with his back toward his assailant. The trial court should, therefore, have peremptorily instructed the jury to return a verdict for Morgan and his employer, the Southeastern Greyhound Lines, upon the conception of his agency.

Appellee maintains that even if Morgan was guiltless, yet. his employer, the Southeastern Greyhound Lines, is responsible for Maynard's act because of the interlocking of ownership and operation of the two corporations, and because Maynard was the bus company's agent in selling tickets for transportation over its lines.

The Greyhound Terminal of Louisville, Incorporated, is a separate corporation from the Southeastern Greyhound Lines. Its stock is owned by the latter and three other bus companies and seven individuals. It is managed by different officers and different employees. The Terminal Company had leased the building and was operating the station for several bus companies. They paid the Terminal Company for its service according to the amount of collections for the tickets. Each bus company had a local manager and separate employees. The Terminal Company's managers and employees had no control over the employees of the bus companies or vice versa. We have often held that where one corporation was but the alter ego of another, or but a conduit through which one operated as by way of pretense or deceit, or in the perpetration of a fraud, the courts will look through the fiction and place responsibility where it belongs. That condition does not appear in this case, for the corporate entity and independent operation of each is clear. C. L. & L. Motor Express Co., Inc., v. Achenbach, 259 Ky. 228, 82 S. W. (2d) 335. If it should be said that the method of operating the station and the contractual relation of the two corporations were such as to impose responsibility of one of them for any wrong committed by an employee of the other, of necessity the conclusion is reached that a verdict should have been directed for the Terminal Company upon the same ground that we find it should have been for the bus company, namely, that Maynard in assaulting Harden was not acting within the scope of his employment so as to make his immediate employer liable in damages under the doctrine of respondeat superior. For distinctness, we may note that the case does not involve any element of negligence either in omitting to protect a passenger from assault or in committing some act injuring one.

Overlooking the improbabilities of the testimony of plaintiff's discredited witnesses, and accepting for the argument their recitation of the occurrences as being of the facts, the concrete legal question is whether the employer of a man whose duties were confined to selling tickets is legally responsible for his unprovoked and malicious assault upon a bare licensee on the premises.

In J. J. Newberry Company v. Judd, 259 Ky. 309, 82 S. W. (2d) 359, 362, we reviewed the authorities and development of the law and held it to be settled that the rule of imputation of wrong to a corporate employer, and its legal liability, embraces all tortious acts authorized by it or them in pursuance of any general, special or implied authority to act in its behalf on the subject to which they relate or which the corporation subsequently ratified. And, conversely:

"It is clear the rule of respondeat superior cannot be invoked and the employer held liable where the action of the employee was motivated by conceptions of personal wrong or the invasion of his private rights. And though there is some conflict of opinion, the trend of the decisions is to exonerate the principal where the act was not for the protection of his property or interests, but was to vindicate public justice or to redress an offense against society, or to punish an offender for something already done, although the wrongful act had its origin in some agency relation."

And as further said therein:

"The character of employment is an important consideration attending the inclusion or exclusion of the particular agent's misconduct as within or without his implied authority."

Pursuing the rule to a concrete application, as stated in John v. Lococo, 256 Ky. 607, 76 S. W. (2d) 897, upon abundant authority, it is a well-known principle that as a general rule it is not within the scope of a servant's employment to commit an assault upon a third person and the master is not liable for such an assault though committed while the servant was about his master's business.

In the instant case, Maynard's only duty, as we have said, was to sell tickets. It was no part of his duty, express or implied, to maintain order or preserve the

peace about the premises or to protect the bus drivers from harm. Of his own volition he left his post of duty, and, according to the predicate upon which we base the proposition of law, went outside the building to the platform and there killed a man who, as we have said, was but a bare licensee on the master's premises and was doing nothing harmful or injurious to the master. If the unfortunate act was as shown by the overwhelming evidence, then Maynard struck the man in defense of another whom he had reason to believe was in danger of death or great bodily harm at the hands of an assailant, so that his act was legally justified and not wrongful. Under neither conception can it be said that he was acting within the scope or the apparent scope of his employment or doing anything in furtherance of his employer's business. Upon this ground, the trial court should have given a peremptory instruction for the Terminal Company; and, even under plaintiff's theory of agency of the bus company, also for the Southeastern Greyhound Lines. Chesapeake & O. R. Co. v. Pruitt, 157 Ky. 133, 162 S. W. 781; Chesapeake & O. R. Co. v. Ford, 158 Ky. 800, 166 S. W. 605; Guy W. Smith & Sons v. Dawson, 206 Ky. 107, 266 S. W. 926; Keel v. Steele Coal Co., 207 Ky. 431, 269 S. W. 531; John v. Lococo, supra; Meredith v. Fehr, 262 Ky. 648, 90 S. W. (2d) 1021; Moore v. Ford Motor Co., 265 Ky. 575, 97 S. W. (2d) 400.

When we come to consider Maynard's appeal, we would probably be justified in reversing the judgment against all parties on the ground that the verdict is flagrantly against the evidence. But in view of the conclusions reached as to what the trial court should have ruled as to the other defendants, the Taylor circuit court had no jurisdiction to submit the case against Maynard. Service of summons was had upon the bus company and Morgan in Taylor County, and upon the Terminal Company and Maynard in Jefferson County, where they resided. Deleting irrelevant provisions, Section 80 of the Civil Code of Practice provides that in a transitory action against several defendants no judgment shall be rendered against any of them if the action be discontinued or dismissed as to the defendant who was summoned in that county, unless those served out of the county make defense without objecting to the jurisdiction of the court. Both Maynard and the Terminal Company made seasonable and appropriate objection to the

jurisdiction of the Taylor circuit court and properly saved exceptions to the ruling against them. Therefore, if the court had dismissed the case against the two defendants summoned in Taylor County, as we hold it should have been done, on the ground that the cause of action pleaded against them was not proved, then he should have dismissed the case against Maynard for jurisdiction over him was lost. University of Louisville v. Metcalfe, 216 Ky. 339, 287 S. W. 945, 947, 49 A. L. R. 375; Ramey v. Weddington, 268 Ky. 675, 105, S. W. (2d) 824.

The judgment is reversed.