## Fournier v. Churchill Downs—Latonia, Inc., et al.

Oct. 27, 1942.

Leo J. Sandmann for appellant.

Carroll, McElwain & Ballantine for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER— Reversing.

Since the trial court sustained a demurrer to the petition, as amended, the sole question for determination is whether it stated a cause of action against appellee, Churchill Downs-Latonia, Incorporated.

On April 24, 1936, the Governor of the Commonwealth issued an order directing certain detachments of the National Guard of Kentucky, approximately 600 in number, to report May 2, 1936 (Derby Day), to the Assistant Adjutant General at Louisville, Kentucky, "for further orders in connection with maintaining order and preventing rioting due to insufficient police power in Jefferson county." The petition alleged this fact, and, further, that the military detachments, acting upon the request of Churchill Downs-Latonia, Incorporated, reported to the latter inside the premises owned, operated, and controlled by it as a race track in Louisville. Some of the soldiers were equipped with riot clubs when they arrived at the track; those not so equipped were furnished by appellee with weapons consisting of short lengths of rubber hose. Shortly after their arrival, the Assistant Adjutant General met with company com-

manders and Mr. Tom Young, superintendent of appellee's racing establishment and in charge of its grounds, at which time Mr. Young designated the locations at which he desired the troops to be placed and advised them of the duties he desired them to perform. It was further alleged that appellee, its officers, servants, agents, and employees knew, consented, and acquiesced in equipping the troops with riot clubs and other weapons and accepted the services of the troops in protection of the property of appellee; generally policing the premises; preventing guests of appellee from going upon certain parts of the grounds; and preventing those who did not desire to pay admission from coming onto the property; that in such capacity all of the troops were acting as private guards in the exclusive service and employ of appellee. It was further alleged that on the 2nd day of May, 1936, upon payment of the regular admission fee, appellant was admitted within the gates of the racing establishment, and, in company with others was being conducted by one of appellee's employees to a place near the starting point of the Derby race, in order that he and his companions might witness to better advantage the running of the race; that while appellant was walking with his head inclined downward, in the act of reading a program, and without warning or challenge from any one as to his right there to be present, he was assaulted and struck on the head with a riot club at the hands of Captain Henry Merrit, who was in charge of a detail of the National Guard, as a result of which he suffered permanent injuries; that at the time of the attack Captain Merrit was acting as an agent, servant, and employee of appellee and was in the discharge of the duties intrusted to him by such employment. Other allegations were contained in the 17-page petition which we consider to be immaterial to the question presented.

It is contended by appellee that since the petition alleged that the Governor ordered and directed the soldiers "to Louisville for the intended purpose of supplementing police officers in Jefferson county and for the purpose of maintaining order and preventing rioting due to insufficient police power in Jefferson county," that the soldiers assigned for the protection of the property of appellee were public officers in public service and were not employees of appellee for whose acts appellee is responsible.

In 35 Am. Jur. Section 542, page 972, it is said:

"When private persons, with the consent of the state or a political subdivision, employ its police officers to represent them, and to do special work for them in protecting and preserving their property and maintaining order on their premises, and such officers are engaged in the performance of their duties to their employers, and are acting within the scope of their powers and duties, they become and are the servants and employees of such private persons, and the private employer becomes liable for their negligent and wanton acts committed in the line of their duty, and when engaged in the performance of such duties, to the injury of others."

That "one volunteering services without agreement for or expectation of reward may be a servant of the one accepting such services" is a rule generally and universally accepted and is stated in the precise language quoted above in Restatement of the Law on Agency, Volume 1, Section 225, page 496. Another rule of general application is stated on the same page of the same work, Section 224, in the following language: "One compelled by law or duress to render services to another has power to subject the other to liability as if there were a master and servant relationship." The general principles applicable to the questions here involved have been fully discussed in many opinions of this court, in some of which the master was exonerated and in others of which he was held liable for the tortious acts of the servant. In those cases, as in this case, where the injured party had been invited to submit his person, comfort, and safety to the keeping of the master and his servants, it was conceived that the master has a special duty to protect the invitee. Moore v. Ford Motor Co., 265 Ky. 575, 97 S. W. (2d) 400, and cases therein cited, notably J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. (2d) 359. We deem it unnecessary to reiterate the reasons contained in those opinions.

The test as to whether or not the offending servant or employee has committed an act for which his private employer will be rendered liable would seem to be, whether (1) the act is of the kind the offender is employed to perform; (2) it occurs substantially within the authorized time and space limits of the employment, and, (3) the offender is actuated, at least in part, by a purpose to

serve the master. A. L. I. Restatement of the Law of Agency, Volume 1, Section 228, page 505. This test in substance was adopted in Hill v. Poindexter, 171 Ky. 847, 188 S. W. 851, 852, L. R. A. 1917B, 699, wherein, quoting from a Supreme Court case it was said:

"The question is one of agency. The result is determined by the answer to the further questions, whose work was the servant doing? and under whose control was he doing it?"

Using the foregoing authorities as our guide, we find the allegations of the petition, if supported by the evidence, sufficient to establish that the Governor of the Commonwealth loaned to appellee the services of certain contingents of the National Guard, placing them under appellee's control for the purpose of maintaining order within the limits of its private place of business, and for the protection of its property thereat. Although it would seem from the allegations of the petition the person who committed the offense went beyond reasonable bounds in what he conceived to be his duty, nevertheless, it was an act of the kind he was employed to perform and was perpetrated with a weapon with which appellee approvingly knew he was armed. The assault occurred at a time the engagement of the offender was authorized by appellee and within the limits of space designated by appellee, and, undoubtedly, the offender was actuated by a purpose to serve the owner of the track. That being true, although vested with authority of law and directed to perform the services by his commanding officers, the offender was, no less, performing services of a private character for appellee; and for which, if negligently performed, or wantonly executed, the private employer must answer in damages. Accordingly we are of the opinion that the trial court erred in sustaining the demurrer to the petition, as amended.

Wherefore, the judgment is reversed.