John MARCUM, d/b/a Marcum Auto Sales,
Appellant,

v.

Harold C. HEDGER, Appellee.

William HURLEY, Appellant,

v.

Harold C. HEDGER, Appellee.

John MARCUM, d/b/a Marcum Auto Sales,
Appellant,

v.

Harold C. HEDGER, suing as the next
friend of his minor child, Stewart Hedg-
er, age 17 years, Appellee.

William HURLEY, Appellant,

v.

Harold C. HEDGER, suing as the next
friend of his minor child, Stewart Hedg-
er, age 17 years, Appellee.

Court of Appeals of Kentucky.

June 21, 1957.

L. M. Ackman, John Lane Ackman, Williamstown, Harlan Heilman, Carrollton, for appellant.

Raymond R. Vincent, Raymond L. Vincent, Ottis Lanter, Williamstown, for appellee.

CULLEN, Commissioner.

Stewart Hedger, a 17-year-old boy, suffered a broken leg, and some other injuries, when struck by an automobile driven by one Matthew Moore, which left the highway and ran upon the lawn of the Hedger home, where Stewart was mowing the grass. Stewart's father Harold Hedger, suing individually and as next friend of Stewart, brought action against John Marcum and William Hurley, alleging that Moore was their servant in operating the automobile. Recovery was sought on behalf of Stewart for his personal injuries, and on behalf of the father for medical and other expenses, loss of Stewart's services, and damage to the lawnmower. The jury returned a verdict against Marcum and Hurley jointly, of $9,000 for the personal injuries and $1,-234.75 for the damages sustained by the father. Upon motion for a new trial, the judge announced that he would grant the motion unless the plaintiff would agree to remit $1,000 of the personal injury verdict. The plaintiff did so agree, the motion for a new trial was overruled, and judgments were entered in the amounts of $8,000 and $1,234.75, respectively. Marcum and Hurley have appealed from the $8,000 judgment, and have moved for an appeal from the $1,234.75 judgment.

The first contentions of the appellants are that there was insufficient proof to sustain a finding that Moore was their servant or agent, and that the instructions on this question were erroneous. Both appellants maintain that the evidence was equally as consistent with the theory that Moore was a gratuitous bailee or an independent contractor, as with the theory that he was a servant, and therefore the finding that he was a servant was based on conjecture. Each appellant also insists that if Moore was a servant, he was the servant of the other appellant.

The evidence presents a somewhat complicated picture of events occurring on July 1, 1955, the day of the accident. Marcum, Hurley and Moore drove to Cincinnati that morning, in Marcum's pick-up truck, from Sand Gap, in Jackson County, Kentucky, where Marcum and Hurley lived and where Moore had some family connections. Marcum operated a general store and a used car lot, and Hurley was a construction worker. Moore, who was Hurley's brother-in-law, had been working and living in Cincinnati. Hurley's purpose in making the trip was to obtain a used automobile for himself at the auction sales in Cincinnati. Marcum was to purchase the automobile for Hurley, since only a dealer could bid at the sales. Marcum also intended to buy

one or more automobiles himself, and a further purpose of his trip was to buy merchandise for his store. He brought with him two dealer's license plates to be affixed to the purchased automobiles. Moore's avowed purpose in making the trip was to pick up an unemployment compensation check in Cincinnati, and it appears that he had some intention of remaining in Cincinnati.

After arriving in Cincinnati, the three men separated for a time, and later Marcum and Hurley met at a used car sales lot. Hurley selected a Chevrolet on which he asked Marcum to bid. Marcum made a successful bid, and Hurley gave Marcum the money with which to pay for the car. Marcum received from the seller an Ohio certificate of title, in which the vendee's name was not filled in. Marcum handed the certificate to Hurley. A short time later a Buick was purchased for Hurley in the same way. Marcum also bought an automobile for himself. While this was going on, Moore came to the lot and indicated his intention to return to Sand Gap.

The dealer's plates were taken out of Marcum's truck and were affixed to the Chevrolet and Buick by Hurley and Moore. Hurley asked Moore whether he had a driver's license and knew how to drive a Chevrolet. Having answered in the affirmative, Moore got into the Chevrolet and drove it away. In a few minutes Hurley started for home, driving the Buick. A short time later Marcum left Cincinnati in his truck, apparently having decided to leave behind, for the time being, the automobile he had purchased for himself.

The accident occurred in Grant County, on the route home from Cincinnati to Sand Gap. Hurley and Marcum arrived at the scene at short intervals after the accident.

Hurley testified that it was his agreement with Marcum that the latter was to deliver the automobiles to him in Sand Gap, and provide him with suitable title papers there. After the accident, Marcum did endorse to Hurley the title papers for the Buick, but the papers for the Chevrolet were never completed. There was evidence as to statements made by Marcum after the accident, tending to show that he considered that he was "bringing those cars back" when the accident occurred.

We find no merit in the contention that the evidence indicated a mere gratuitous bailment. It is obvious that the car was turned over to Moore, not because he needed a ride to Sand Gap, but because Marcum and Hurley wanted and needed the car delivered to Sand Gap. The movement of the car was for their benefit, not Moore's. Notwithstanding the absence of testimony as to any specific words of request or direction to Moore to drive the car, such a request or direction may clearly be implied from the situation and circumstances.

We also find no basis for the claim that the evidence warranted a conclusion that Moore was an independent contractor. Ordinarily, an independent contractor relationship is found to exist only where the alleged contractor is rendering service in the course of an independent occupation, from which he expects to and does receive compensation. See Andres v. Cox, 223 Mo. App. 1139, 23 S.W.2d 1066. Here, Moore was not in the business of transporting automobiles, and no compensation was contemplated. It is argued that Moore should be considered an independent contractor, or at least not a servant, because Marcum and Hurley did not exercise any control over the details of performance of the service. However, it is the *right* to control the details that is the determining factor, and we think the evidence shows that the parties intended that Moore should take the car where, when and how Marcum and Hurley desired. No directions as to details were given simply because they were not considered necessary.

It is reasonably apparent that Moore was driving the automobile at the request of Marcum and Hurley, for their purposes, and as an accommodation to them. This

was sufficient to make him their servant. 60 C.J.S. Motor Vehicles § 436a, p. 1086. The fact that Moore may have volunteered his services without agreement for or expectation of reward does not prevent him from being a servant. Fournier v. Churchill Downs-Latonia, 292 Ky. 215, 166 S.W.2d 38.

Hurley argues that because Marcum had agreed to deliver the car to Sand Gap, and to furnish satisfactory title papers, and because Marcum's license plates were on the car, Moore could only be the agent of Marcum. On the other hand, Marcum maintains that he merely bid on the car as an accommodation for Hurley, and when Hurley paid for the car it became his; that the Ohio title certificate was complete except for filling in Hurley's name; and that Moore was Hurley's agent. Regardless of these technical considerations, we think it is clear that both Marcum and Hurley had some interest in the movement of the car to Sand Gap; Hurley because he had paid for the car; and Marcum because he had a contractual obligation to deliver; and that it was for their joint accommodation and purposes that Moore was driving the car.

The instructions stated that if the jury believed Moore was operating the car "for and on behalf of" one of the defendants "for the purpose of transporting said automobile from one point to another," then Moore was the agent or servant of that defendant, and if for both, then he was the agent or servant of both. We think this instruction properly stated the applicable test of agency under the evidence.

█ Objection is made that the verdict was contrary to law, because, while the instructions told the jury if they found against both defendants they should assess one-half of the damage against each defendant, the jury actually returned a verdict against the defendants jointly for the full amount of damages. The instruction was erroneous, because the defendants were not being sued as joint tort-feasors, but as joint masters of a servant. The verdict reached the right answer, and under the circumstances the error in the instruction, and the failure of the jury to follow the instruction, cannot be considered prejudicial.

█ Other objections to the instructions are argued, but reasons for the objections were not given the trial court, and therefore they will not be considered here. CR 51.

██ The award of damages to the injured boy's father included $400 for labor he was forced to hire in July and August of 1955 to do the farm work which the boy ordinarily did. The appellants contend there was no proof that the father paid out this sum, or any sum. The record indicates that the father first attempted to prove what help he had employed, and the expense of it, but the defendants objected. Thereupon the father testified that the reasonable value of the boy's services, for the summer, was $400. Since the defendants, by their objections, had prevented the introduction of evidence as to the amount actually paid, we do not see how they can now complain of the failure to introduce such evidence. Furthermore, we think the father's testimony as to the reasonable value of the boy's services was competent to sustain an award of damages for loss of those services, without proof of what he actually paid for substitutes.

█ We come now to the contention that the award for personal injuries was excessive and that the trial court had no authority to allow a remittitur. There was no proof of permanent impairment of earning power, or permanent disfigurement, so the award of damages must be considered in terms of pain and suffering. The boy suffered a comminuted fracture of the right leg. Two metallic screws were inserted in the tibia, and the leg was placed in a cast. At the time of the trial the cast had been on for seven months, and the doctor testified it would be an additional three months before the leg could bear weight. The doctor said

that if the healing continued satisfactorily, there should be a normal recovery.

In addition to the broken leg, the boy sustained brush burns or abrasions over most of his upper back, and a five-inch laceration and loosening of the scalp. He remained in the hospital for three weeks.

There was some medical testimony with regard to a slight impairment of the boy's vision and hearing, but there was no positive statement that this was caused by the accident.

In Williams v. Larkin, Ky., 268 S.W.2d 394, 397, this Court held that an award of $12,500 damages to a 17-year-old boy, for a broken leg, was not excessive. It is true in that case there was evidence the leg was not healing properly, and that there would be a permanent disablement of some degree unless remedial treatment proved successful. However, there was no basis for determining the extent or duration of the disablement, and the Court could not assign any specific portion of the damage award to the impairment of earning power. The Court said:

" * * * We are compelled to rely upon the somewhat nebulous rule that an award will not be set aside as excessive unless it is so disproportionate to the injury as to strike the mind at first blush that it was the result of passion and prejudice. * * *"

Upon reading the evidence in the case before us, we do not immediately react with the impression that the damages are outrageous, extravagant or exhorbitant, such as could have been granted only as a result of passion or prejudice. Accordingly, we cannot say that the verdict of $9,000 was excessive.

■ If the verdict of $9,000 was not excessive, then the trial court would not have been warranted in granting a new trial on the ground of excessive damages. This being so, the defendant was not prejudiced by the action of the trial court in directing a remittitur to $8,000 as a condition of not granting a new trial. We therefore do not reach the question of whether the court had authority to require the remittitur.

The motion for an appeal from the judgment for $1,234.75 is overruled, and the judgments are affirmed.