Lisa Huntley **FLECHSIG,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 92–5189.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1992.
Decided Feb. 23, 1993 *.

---

\* This decision was originally issued as an "unpublished decision" filed on February 23, 1993. On April 5, 1993, the court designated the opinion as one recommended for full-text publication.

Jeffery C. Duffey, Susan G. James (Briefed), Denise A. Simmons (Argued), Montgomery, AL and William M. Scalf, Lexington, KY, for plaintiff-appellant.

Karen K. Caldwell, U.S. Atty., Martin L. Hatfield, David Bunning, (Briefed), Asst. U.S. Attys., Office of the U.S. Atty., Lexington, KY and Carolyn A. Sabol (Argued), Deputy Gen. Counsel, Bureau of Prisons, Washington, DC, for defendant-appellee.

Before: KENNEDY, MARTIN and JONES, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Lisa Huntley Flechsig appeals the District Court's denial of her Fed. R.Civ.P. 59(e) motion to alter or amend judgment. The District Court granted the United States' motion for summary judgment on her Federal Tort Claims Act claim on three alternative bases. Because we find two of these grounds to have been correct and controlling we affirm, but for the reasons stated below.

I.

On February 22, 1991, plaintiff filed a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging

that the United States was liable for assault and battery committed by a federal correctional officer employed by the Bureau of Prisons ("Bureau"). While plaintiff was confined at the Federal Correctional Facility at Lexington, Kentucky, she underwent brain surgery. A CAT scan was required as part of follow-up treatment. According to plaintiff, on February 18, 1988 Officer Bruce Trent transported her to the doctor's office for this CAT scan. While on the way to the doctor's office, Officer Trent stopped the government car at the end of the correctional facility driveway and removed plaintiff's handcuffs. As they drove away from the facility, Officer Trent told plaintiff that his apartment was nearby and that they could stop there for a drink. After plaintiff indicated that she did not wish to do so, Officer Trent stated that if she did not go with him, he would claim she had tried to escape. While at his apartment, Officer Trent sexually assaulted plaintiff. We accept plaintiff's allegations regarding the assault as true for the limited purpose of this review.

The FTCA constitutes a limited waiver of sovereign immunity by the United States. In thus giving consent to suit in particular circumstances, the FTCA defines the scope of district court jurisdiction to entertain FTCA suits. *See* 28 U.S.C. § 1346(b). In the present case, the District Court found three reasons that plaintiff's claim did not satisfy the requirements of the FTCA. First, the District Court interpreted 28 U.S.C. § 2680(h) to require that for the United States to be liable for an intentional tort by a law enforcement officer, the tort must occur during the course of a search,

seizure, or arrest. It was not alleged that the assault against the plaintiff occurred during one of these actions. Second, the District Court held that Officer Trent had not been acting within the scope of his employment, as required under 28 U.S.C. § 1346(b). Finally, the District Court held that plaintiff was unable to show that the United States had violated the duty of care it owed to the plaintiff as a prisoner under 18 U.S.C. § 4042. Because we find the District Court to have been correct on the latter two grounds and find these grounds to be an adequate basis for dismissal of the case, we do not address the issue raised by the District Court's first ground for dismissal.[1]

## II.

In dismissing plaintiff's intentional tort claim, the District Court held the claim barred by the scope of employment requirement of 28 U.S.C. § 1346(b). Section 1346(b) states that district court jurisdiction over civil actions against the government for the acts or omissions of its employees is dependent on whether the particular employee is "acting within the scope of his office or employment." The District Court properly held that the determination of whether an employee of the United States acted within her scope of employment is a matter of state law. *Arbour v. Jenkins,* 903 F.2d 416, 422 (6th Cir.1990); *cf. Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). As the District Court stated, Kentucky law on scope of employment for employee assaults is clear. According to the classic formulations of the doctrine, "as a

---

**1.** The District Court interpreted 28 U.S.C. § 2680(h) to require that for an intentional tort by a federal law enforcement officer to create government liability, it must have occurred during the course of a search, seizure, or arrest. In general, section 2680(h) excepts intentional torts from the FTCA's waiver of sovereign immunity and grant of jurisdiction. In 1974, however, Congress amended section 2680(h) to include a proviso that a certain limited category of intentional torts would not be included in the section 2680(h) general exception from liability for intentional torts. Act of March 16, 1974, Pub.L. No. 93–253. Intentional torts arising out of "acts or omissions of investigative or law en-

forcement officers" are thus not excepted from government liability. Section 2680(h) defines investigative or law enforcement officer as any government officer "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Following the reasoning of the Third Circuit in *Pooler v. United States,* 787 F.2d 868 (3d Cir.1986), the District Court interpreted the limiting language in the definition of "investigative or law enforcement officer" to require the action creating liability to have occurred during a search, seizure, or arrest. We neither affirm nor reverse this interpretation of section 2680(h).

general rule it is not within the scope of a servant's employment to commit an assault upon a third person and the master is not liable for such an assault though committed while the servant was about the master's business." *Southeastern Greyhound Lines v. Harden's Adm'x*, 281 Ky. 345, 136 S.W.2d 42, 45 (1940). An employer is liable for an assault by an employee "if the servant was doing what he was employed to do at the time of the injury; that is, the act of the servant was ... reasonably incident to the service the servant was employed to render." *John v. Lococo*, 256 Ky. 607, 76 S.W.2d 897, 898 (1934).

■ It might be argued that both *Harden's Adm'x* and *Lococo* involve third parties as victims and thus the rule they state applies only to situations with third-party victims and not to situations with a special relationship between employer and victim, such as the United States and prisoner in this case. Indeed, plaintiff argues that the relationship between employer and victim, such as the United States and prisoner in this case. Indeed, plaintiff argues that the relationship between employer and victim here is analogous to that between common carrier and passenger. Kentucky law on the scope of employment does appear to shift when the employer is a common carrier, because of its "broad duty to protect ... passengers from assault." *Gladdish v. Southeastern Greyhound Lines*, 169 S.W.2d 297, 299 (Ky.1943). "The carrier's obligation is that the contact between passenger and employee brought about by the passenger being placed in the custody of the employee will not result in an unjustified assault...." *Id.* While it might be tempting to analogize the prisoner in the present case to such a passenger, Kentucky law dictates otherwise. The breadth of common carrier liability comes from the role of the carrier and its employees in protecting passengers from external threats. The role of a prison and its guards is more similar to the situation in *Fournier v. Churchill Downs–Latonia, Inc.*, 292 Ky. 215, 166 S.W.2d 38 (1942). In *Fournier*, a race track hired extra guards to control the crowds attending a race. In determining that the race track was liable

for an assault by a guard upon a patron, committed with the club provided for the guard's duties, the Kentucky Court employed a three-part test. The employer is liable for the act of an employee, it stated, if "(1) the act is of the kind the offender is employed to perform; (2) it occurs substantially within the authorized time and space limits of the employment; and, (3) the offender is actuated, at least in part, by a purpose to serve [the employer]." *Id.*, 166 S.W.2d at 40. In the present case, taking the facts as plaintiff alleges them, the sexual assault by Officer Trent obviously is far from what he was employed to do, his apartment clearly is outside the space limit of his employment, and it would be impossible to assert that he was actuated in any way by the purpose of serving the Bureau of Prisons. For these reasons, we affirm the holding of the District Court that Officer Trent acted outside the scope of his employment and thus plaintiff has no claim under the FTCA based on Trent's conduct.

### III.

■ In dismissing plaintiff's negligence claim, the District Court held that plaintiff was unable to present any facts which would support a breach of duty by the Bureau of Prisons under 18 U.S.C. § 4042. Plaintiff's negligence theory must be based on possible negligence of Bureau personnel other than Trent, who was not acting within the scope of his employment, as we held *supra*. Although neither the complaint nor plaintiff's brief in response to the United States' motion for summary judgment, nor even plaintiff's brief for this appeal, clearly states plaintiff's negligence theory, it appears to be that the United States was negligent in selecting Trent to transport plaintiff to the doctor's office. The FTCA allows suit by a federal prisoner for personal injury suffered as the result of employee negligence. *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). This duty of care is set by section 4042. *Id.* at 164–65, 83 S.Ct. at 1858–59. In order to determine liability, the elements of state tort law must be applied. *Schindler v. United States*, 661

F.2d 552, 560 (6th Cir.1981). Kentucky law provides that "ordinary care" must be taken "to prevent any foreseeable injury." *Watters v. TSR, Inc.,* 904 F.2d 378, 380 (6th Cir.1990) (quoting *M & T Chemicals, Inc. v. Westrick,* 525 S.W.2d 740, 741 (Ky. 1974)).

As a theory of negligence, plaintiff points to the Bureau's violation of its own internal operating procedure requiring at least one same-sex escort for a prisoner leaving prison grounds for medical care. *See* Federal Prison System, U.S. Dep't of Justice, *Program Statement 5538.1,* paragraph 10(e)(1) (Oct. 30, 1985) ("Program Statement"). In *Schindler,* this Court determined that if state law creates negligence *per se* for violation of a regulation, examining the federal regulation may be relevant to determining negligence. 661 F.2d at 561. In Kentucky, violation of a statute is negligence *per se* if the harm resulting from the violation is the type of harm the statute is intended to prevent, if the person injured is who the statute was intended to protect, and if the statute is for safety and not for government convenience. *Home Insurance Co. v. Hamilton,* 253 F.Supp. 752, 755 (E.D.Ky.1966). Similarly, violation of a public safety regulation may also form the basis of negligence *per se. Britton v. Wooten,* 817 S.W.2d 443, 447 (Ky.1991); *Hamilton,* 253 F.Supp. at 754. The Program Statement, however, is not a regulation from which negligence for violation should arise *per se. Cf. Schweiker v. Hansen,* 450 U.S. 785, 789–90, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (holding Claims Manual of the Social Security Administration is not legally binding regulation). It is, instead, simply the Bureau's written statement of its internal operating procedures and thus insufficient to create *per se* liability whenever it is not followed. To hold otherwise would be to create a disincentive for the Bureau to have written procedures. An organization creates documents such as the Program Statement here as aspirational guidelines. To hold that failure to follow such guidelines creates potential Bureau liability would be to cause the Bureau to adopt as procedures only what is legally required.

The Bureau should not be discouraged, due to fears of increased liability, from promulgating guidelines which improve performance. *See id.* at 789–90, 101 S.Ct. at 1471.

The mere fact that a male prison guard escorted a female prisoner alone is not sufficient to make the alleged events ones which a reasonable person should have foreseen. There is no allegation that Bureau personnel had any reason to believe that Trent had any predisposition *for* violence or would otherwise be a danger to an inmate in his custody. Accordingly, we affirm the District Court's dismissal for failing to allege a state of facts under which the Bureau could have breached its duty under 18 U.S.C. § 4042.

### IV.

For the reasons stated above, we AFFIRM the District Court's grant of the United States' motion for summary judgment and its denial of plaintiff's motion to alter or amend the judgment.