**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0603n.06
Filed: August 21, 2006

**No. 05-3558**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PHILIP L. PROCTOR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES DEPARTMENT OF | ) | SOUTHERN DISTRICT OF OHIO |
| EDUCATION, | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Philip Proctor sued the Department of Education ("DOE"), challenging DOE's decision to garnish his wages in payment on defaulted student loans. DOE counterclaimed for the amount allegedly outstanding on Proctor's student loans. Proctor also advanced tort claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). The district court granted the defendants' motions for summary judgment, and Proctor argues on appeal that genuine issues of material fact precluded summary judgment. We affirm.

I

Proctor financed his ten-year higher education with sixteen student loans. Various agencies guaranteed the loans and, after Proctor defaulted, the guarantors paid the lenders and sought payment from Proctor. Proctor paid five of the loans, and the guarantors assigned the remaining eleven to DOE. In 2000, DOE initiated a garnishment action.

Proctor requested a hearing from DOE regarding the garnishment, maintaining that he paid off his student loans in 1995. Proctor complained that his records reflecting the loan payments were stolen when a lock box was taken from his house in 1995 and that his banks had since purged the records relating to his accounts. The hearing officer ruled that the garnishment could proceed because Proctor failed to show that he paid the loans.

Proctor then sued, asking the district court to review DOE's decision. He also brought FTCA claims against the United States, alleging defamation, invasion of privacy, and intentional infliction of emotional distress related to the garnishment action. DOE counterclaimed for the amount it alleged to be outstanding on Proctor's student loans. The district court granted summary judgment in favor of the defendants. It held that DOE did not arbitrarily or capriciously allow the garnishment, that no genuine issue existed as to whether Proctor owed the money, and that sovereign immunity shielded the United States from Proctor's FTCA claims.

II

We review a grant of summary judgment de novo, examining the evidence in the light most favorable to Proctor and affirming summary judgment only if there is no genuine issue as to any material fact. *Nat'l Solid Wastes Mgmt. Ass'n v. Daviess County*, 434 F.3d 898, 902 (6th Cir. 2006).

### A. Summary Judgment as to Outstanding Loans

Proctor contends the district court committed multiple errors in awarding summary judgment to DOE on his challenge to the garnishment action and on DOE's counterclaim. Proctor argues that the district court mishandled discovery and that he raised sufficient defenses to trump DOE's counterclaim. We disagree.

### 1. Discovery

Proctor complains that the district court erred in denying his motion to compel certain discovery. The district court enjoys broad discretion in handling discovery disputes. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005). Here, the court found that DOE sufficiently complied with Proctor's discovery requests by providing "the name, address and telephone number of every entity that held plaintiff's student loans, and every collection agency that provided collection services with respect to those loans." Proctor offers nothing to suggest that the district court abused its discretion other than his assertion that this ruling conflicts with *United States v. Rhodes*, 788 F. Supp. 339 (E.D. Mich. 1992). *Rhodes*, however, neither conflicts with the district court's ruling—the *Rhodes* court held only that the government must produce evidence in order to

survive a motion for summary judgment—nor binds the district court. Accordingly, we find that the district court did not abuse its broad discretion.

## 2. Proctor's Defenses

Proctor argues that the district court erred in granting DOE summary judgment on its counterclaim. Proctor contends first that the district court improperly placed the burden on him to prove payment and that, in any event, he met his burden by raising a genuine issue of material fact with regard to whether he paid the loans. He also argues that the government failed to produce any admissible payment histories, that the student loans are contractually unenforceable, and that laches bars the government's claim.

### a. Repayment

Proctor maintains that the district court improperly placed the burden on him to show that he paid his loan debts. But the court got it right—and it is Proctor who misstates the burden-shifting rules. DOE satisfied its initial burden on its counterclaim by showing that Proctor "signed promissory notes, received student loans . . . , and defaulted on his repayment obligations." *United States v. MacDonald*, No. 93-1924, 1994 WL 194248, at *2 (6th Cir. May 16, 1994). At that point, it was up to Proctor to present evidence supporting his defense of repayment and, although Proctor "asserted that he had repaid his student loan in full," he "did not meet his burden of proving the . . . . extinguishment . . . of the obligation." *United States v. Davis*, 28 F. App'x 502, 503 (6th Cir.

2002); *see U.S. v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975) ("The [district] court erroneously ruled that the Government had the burden of showing whether all appropriate credits to the account had been given, whereas the burden should have been placed upon the defendants . . . ."). The court below correctly found that the burden fell to Proctor to demonstrate repayment and that Proctor failed to present probative evidence that he repaid his loans.

Proctor protests that he could not present evidence of repayment because the lock box in which he kept his student loan documents was stolen in 1995 and because the government did not supply him with sufficient payment histories during discovery. But the misfortunes that hampered Proctor's ability to demonstrate repayment do not relieve him of his burden and, as discussed above, the district court did not abuse its discretion in its discovery rulings.

Proctor also alleges that his payments were credited to another borrower's account. He points to the inclusion of that borrower's documents in his file—documents relating to three loans to Scott Wiermaa. Proctor notes that his social security number is only one digit off from Wiermaa's. But nothing suggests that Wiermaa received credit for any of Proctor's payments. Although some "Insurance Claim Payments" were erroneously credited to Wiermaa's account, those payments are consistent neither in timing nor amount with any payments Proctor claims to have made. That some of Wiermaa's records ended up in Proctor's file is not evidence of Proctor's payment of his loans.

Proctor also notes that Sallie Mae held his loans for a short time, and some of its records listed Proctor's social security number beginning with 999 or 979 rather than 479. But Sallie Mae corrected the number in its system, and its involvement with the loans ended in 1992, well before Proctor claims to have paid the loans. This typographical error does not save Proctor's case.

Proctor further complains that many of the payment records that the government presented constituted inadmissible hearsay. But even if Proctor is correct, the other evidence DOE offered, to which Proctor did not object—for example, affidavits and collection letters reflecting Proctor's overdue debt—sufficiently demonstrated that the loans were defaulted when DOE acquired them. The district court pointed to the objected-to documents only in concluding that DOE "submitted sufficient evidence . . . to show that the . . . loans at issue . . . have not been paid by Plaintiff." Given that Proctor is responsible for showing payment (rather than DOE for showing nonpayment), Proctor's failure to offer any probative evidence of payment renders harmless any error on the district court's part in considering these documents. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("'In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" (quoting *Godfrey v. Pulitzer Publishing Co.*, 276 F.3d 405, 412 (8th Cir. 2002) (alterations in original) (internal quotation omitted))).

b. Contract Law and Promissory Estoppel

Proctor takes the position that principles of contract law and promissory estoppel prohibit the government from enforcing his promissory notes. He points to a clause in some of the notes providing that the loans are governed by federal regulations adopted under the Higher Education Act. He then argues that federal regulations required the government to procure payment histories on his accounts from the guaranty agencies and that the government neglected to do so here, rendering the promissory notes unenforceable. But even if we assume that Proctor could otherwise prevail on such a theory, his arguments fail because the regulations to which he points specifically permit DOE to "accept the assignment of a loan without all of the documents" and require the agency to retain the documents only "[i]f directed to do so." *See* 34 C.F.R. § 682.409(c)(6). Thus Proctor identifies no failure by DOE to adhere to the "federal regulations" described in the promissory notes.

### c. Laches and Due Diligence

Proctor also posits that the equitable doctrine of laches bars DOE's claim. The district court found that Congress eliminated the defense of laches for collection of student debts when it specifically eliminated the statute of limitations. The Fifth Circuit took this position in *United States v. Lawrence*, 276 F.3d 193, 196 (5th Cir. 2001) ("[W]e adopt the district court's holding that [20 U.S.C.] § 1091a also extends to eliminate the equitable defense of laches."), and other district courts have held likewise. *See Hamilton v. United States*, No. 2:03cv669, 2005 WL 2671373, at *4 (S.D. Ohio Oct. 19, 2005) (holding laches inapplicable and collecting other cases). But even if laches

remains a valid defense, it requires undue delay on the government's (or its predecessor's) part. DOE offers a wealth of evidence that its wage garnishment was preceded by substantial collection activities by it as well as the guarantors. Proctor has not shown that DOE engaged in dilatory tactics or otherwise unduly delayed seeking legal redress.

Proctor raises a due diligence argument that mirrors his laches argument. Assuming that such an argument is cognizable in student loan enforcement cases, *but see United States v. Dwelley*, 59 F. Supp. 2d 115, 119 (D. Me. 1999) (holding that due diligence provisions in the federal regulations govern only the relationship between DOE and lenders, and collecting cases holding likewise), we nevertheless reject Proctor's assertion because DOE and its predecessors engaged in numerous collection attempts throughout the history of these loans.

### d.  Proctor's Reply Brief

In his reply brief, Proctor argues that two additional United States Code provisions, 5 U.S.C. § 552a and 20 U.S.C. § 1095a, support his case. Proctor failed to raise these arguments in his opening brief, however, and we decline to address them. *See Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) (noting that the court has consistently held that it will not consider arguments raised for the first time in reply).

### 3.  Garnishment Hearing

Proctor alleges that the district court erroneously granted summary judgment on his appeal of DOE's garnishment decision. But Proctor's quarrel with the garnishment related to whether he actually owed any debt as opposed to, for example, the procedures of the garnishment or whether the garnishment would result in an unreasonable financial burden. Because we find no fault in the district court's grant of summary judgment on DOE's counterclaim, we reject Proctor's protestations regarding the garnishment decision.

## D. FTCA Claims

The district court found that sovereign immunity shielded the United States from liability on Proctor's FTCA claims. Proctor's sole claim of error with respect to these claims is that "the trial court failed to consider that [the United States's] defenses only apply if the . . . employee . . . was acting within the scope of his or her employment. It is not within the scope of employment to begin a wage garnishment against Proctor under the facts of this case." But if the actions were beyond the scope of employment, they were also beyond the scope of the FTCA. *See Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir. 1993) ("Section 1346(b) states that district court jurisdiction over civil actions against the government for the acts or omissions of its employees is dependent on whether the particular employee is 'acting within the scope of his office or employment.'"); 28 U.S.C. 1346(b)(1). Thus Proctor's challenge to the district court's judgment on his FTCA claims fails.

III

No. 05-3558
*Proctor v. U.S. Dep't of Educ.*

Because Proctor failed to produce probative evidence sufficient to withstand DOE's motion

for summary judgment on its counterclaim, and because the district court correctly granted summary

judgment on the remaining claims, we affirm the judgment of the district court.