ILLINOIS CENTRAL RAILROAD COMPANY, Appellant,

v.

Prudie SWIFT, Adm'x of the Estate of Hayward Swift, Deceased, Appellee.

No. 12639.

United States Court of Appeals Sixth Circuit.

June 1, 1956.

Thomas E. Sandidge, Owensboro, Ky., J. H. Wright and John W. Freels, Chicago, Ill., Thomas J. Wood, Stites, Wood, Helm & Peabody, Louisville, Ky., on the brief, for appellant.

Rhodes Bratcher, Louisville, Ky., W. D. Bratcher, Greenville, Ky., on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This action for damages for death by wrongful act brought by decedent's mother, who was qualified administratrix of his estate, was tried to the district judge without the intervention of a jury. Judgment against the appellant railroad company for $45,650 was awarded the appellee.

Appellee's intestate, Hayward Swift, a sixteen-year-old boy, was employed by appellant to work as a member of a section crew. Neither his father nor his mother gave express consent—either orally or in writing—to such employ-

ment. However, it appears that after learning that he had been employed by the railroad company, the parents made no objection and apparently acquiesced in the employment of their young son. Two of decedent's older brothers were working in the same section crew. One of the brothers, Connie Swift, testified that on or about November 18, 1952, Hayward Swift, as a member of the section crew, was working in a gondola car. He was engaged in unloading riff rock. Connie testified that his brother, Hayward, while prizing a large riff rock with a pick, slipped and fell against the rock, striking his head against the side of the car. Although Connie raised his brother's cap, he did not see "any skinned place." That night, he observed a knot on his brother's head. Hayward did not report the occurrence to the foreman, but continued unloading riff rock the rest of the day. No person other than Connie Swift witnessed the occurrence.

During his employment by the railroad company in Jefferson County, Kentucky, from October 18, 1952, until the latter part of November of that year, decedent and his two brothers regularly returned home each Friday to spend the weekend with their parents. At the time of Hayward's visit home during the latter part of November, his brother took him to Dr. Sherman on the day after Thanksgiving, the accident having occurred on Monday of the same week. Connie told the doctor about the accident and stated that Hayward had been complaining of headache "ever since it happened."

Connie swore, further, that Hayward would grab and hold his head down and would ignore questions; and that the younger brother's condition was very serious. Dr. Sherman diagnosed Hayward's illness as "yellow jaundice and liver trouble." Both parents of decedent testified that Hayward had never suffered from headaches before and had never been under a doctor's care in his life.

Ollie Carter, a railroad employee, stated under oath that Hayward Swift had worked three weeks in the kitchen. During the last week the young man had complained that his head was hurting and that his neck was "drawing back"; that his head had ached from time to time ever since he was a small child; that previously he had taken aspirin which had stopped his headaches, but that "this time it didn't." Carter said that he advised Hayward to "get a doctor's order and go to a doctor." Hayward replied that he intended to wait until he went home and he would then go to see Dr. Sherman. It appears that Dr. Sherman referred him to the Illinois Central Railroad Hospital at Paducah, Kentucky, where he was treated by Dr. Robert L. Reeves, internist in charge of medical cases and a physician of thirteen years' experience in practice.

Dr. Reeves testified that the appellee's decedent was admitted to the hospital on November 30, 1952, at 7:55 o'clock, P.M. The doctor thought that he had obtained the boy's case history from his mother. He was told that, for two weeks prior to admission into the hospital, Hayward had complained of headache but had continued to work until November 27, when he went to Dr. Sherman. The mother told Dr. Reeves that, during the three days prior to admittance, her son had vomited every time he tried to swallow and had complained of a constant ache in the back of his head.

The boy was unable to talk coherently when he was brought to the hospital and was semi-conscious when the doctor first saw him at the hospital. He could be roused only by the shaking of his arm or leg; and, if asked questions, would merely mumble and mutter. The doctor considered that the patient's symptoms were rather typical of encephalitis. A positive diagnosis of that disease, according to the doctor, was made by means of a spinal puncture and an examination of the spinal fluid.

Dr. Reeves explained that encephalitis is an inflammation of the nervous tissue, chiefly the brain, and is caused by a virus. The afflicted individual becomes

extremely lethargic and actually sleeps quite a bit of the time, causing the disease to be commonly known as "sleeping sickness." Asked whether the spinal fluid test conclusively established that his diagnosis of encephalitis was correct, the doctor responded: "Yes sir—as conclusive as medicine can be."

The doctor testified further that encephalitis has no known cure and could not, in the doctor's opinion, be brought about by a blow on the head or a brain concussion. He said that he had never observed a case of encephalitis so caused; and that he would say that it would be extremely improbable that the disease could be caused by a traumatic injury. He was asked: "As I understand you doctors; you hardly say anything is impossible?" "Not anymore," was the answer. Asked on cross-examination the direct question: "From what did Hayward Swift die?" The doctor replied: "He died from encephalitis; encephalitis lethargica as near as we could classify it."

The death certificate gave the cause of death as "Lethargica Encephalitis". There was no contradictory testimony as to the cause of death. To say that he might have died as a result of striking his head in the manner described by his brother is mere unsupported conjecture. A positive diagnosis of encephalitis was established by a spinal fluid test. The disease is caused by a virus condition and not by traumatism, according to the uncontradicted testimony of Dr. Reeves.

We do not consider, as was reasoned by the district judge, that the testimony of Dr. Reeves was purely opinion evidence. He was attending physician during the boy's last illness, and based his diagnosis of encephalitis lethargica upon personal observation and upon an actual scientific test. The evidence was in conflict as to whether the boy had been a normal and healthy youth prior to the accident which his brother described; but, even if he had been, it would be engaging in pure speculation to say that his death of encephalitis was caused by a traumatic injury.

The appellee insists that appellant was guilty of negligence in connection with the decedent's alleged injury, that he was employed in violation of the Kentucky Child Labor Laws, Kentucky Revised Statutes, §§ 339.240; 339.280; 339.300; 339.340, with knowledge by appellant company that he was only sixteen years of age; and that the boy's parents had not acquiesced in his employment so as to preclude recovery.

We deem it unnecessary to consider these allegations upon all of which appellant takes issue, for the reason that unless the death of Hayward Swift was the *proximate* result of the negligence of appellant, or of its violation of the Kentucky Statutes, there can be no recovery. See Phillips v. Scott, 254 Ky. 340, 71 S.W.2d 662; Murphy v. Homans, 286 Ky. 191, 194, 150 S.W.2d 14; Brown Hotel v. Levitt, 306 Ky. 804, 209 S.W.2d 70; citing Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564. In Hinton v. Dixie Ohio Exp. Co., 6 Cir., 188 F.2d 121, 126, we cited numerous Kentucky cases. We held it to be well established in that State that the violation of a statute or ordinance is negligence *per se*, but that such negligence of a defendant will not entitle an injured plaintiff to recover, *unless such violation of the statute is the proximate cause of the injury*.

For the foregoing reasons, we think the finding of the trial court, upon which its judgment was based, that the alleged traumatic injury received by appellee's decedent was the cause of his death, is clearly erroneous.

Accordingly, the judgment is reversed; and the case is dismissed.