The **HOME INSURANCE COMPANY**,
Plaintiff,

v.

**Joel M. HAMILTON**, Defendant.

**No. 243.**

United States District Court
E. D. Kentucky,
Frankfort Division.

April 22, 1966.

Ogden, Robertson & Marshall, by Malcolm Y. Marshall and Wesley P. Adams, Jr., Louisville, Ky., Nelson D. Rodes, Jr., Danville, Ky., for plaintiff.

Chenault & Coy, Richmond, Ky., for defendant.

SWINFORD, Chief Judge.

This diversity action comes before the court on the plaintiff's motion for partial summary judgment under Federal Rule of Civil Procedure 56 on the question of defendant's liability. Interrogatories have been propounded upon the plaintiff, depositions have been taken from the defendant and the two material witnesses, and briefs have been filed by both parties.

On January 1, 1960 the defendant Joel Hamilton entered into a renewal lease with the plaintiff's insured E. P. Woods for a Gulf Service Station at Camp Nelson, Kentucky. The lease provided for monthly rental and was for a term of one year. Hamilton, who was employed as a delivery salesman for Gulf Oil Company in Frankfort, employed Calvin Stipes as his resident manager. Stipes was paid a weekly salary and was to receive a commission on the station profits. He was in charge of the daily operation of the station, had the power to hire and fire employees, made purchases as he chose and was considered the "boss" by other employees. Hamilton would visit the station infrequently and then only for short periods. His wife Gertie Hamilton visited the station every Monday to perform the bookkeeping and accounting duties and to write the payroll checks. On March 31, 1960 she visited the station to send statements to customers and left about twenty minutes before the fire involved here occurred. Stipes employed three other men, Marshall Absher, James Mulligan and Perry Corman, and operated the station on a twenty-four hour a day schedule.

On March 31, 1960 Calvin Stipes decided to tear up an old tile floor in the office or showroom and in one rest room of the station and paint the concrete floor underneath. He called the plaintiff's insured E. P. Woods in Danville, Kentucky and received his oral permission to proceed. The work began in the middle of the afternoon when Stipes and the other three employees were changing shifts and while Mrs. Hamilton was present. They could remove the tiles rather easily with a putty knife but the glue or tar which had once held the old tiles in place was more difficult to remove. At first they sought to clean it up with a mixture of lye and liquid detergent in

water. After Mrs. Hamilton left, they removed all the furniture from the two rooms except a "warm morning" iron stove and fixed wall shelves. When the lye and soap proved ineffective, Stipes suggested that gasoline be used. After checking the stove to be sure it was cool, Perry Corman went to one of the outside gasoline pumps with a two to three gallon water bucket and returned with it about half full of gasoline. Then Stipes and the other three employees poured a substantial amount of the gasoline out on the floor with the water, soap and lye and proceeded to scrub and wash up the tar remaining on the concrete floor. After a few minutes, Stipes walked from the office-showroom to the grease room saying, "These fumes give me a headache and I'm going to hook this fan up and let it blow through there to keep the fumes down." Once in the grease room he started stripping insulation from an old radio cord so that it could be attached to the fan. One of the employees, Marshall Absher, stated in his deposition that the front or outside door was closed so that work could proceed on the floor near the door. Calvin Stipes' deposition says that the front door was "prized open" but does not specifically contradict Absher's statement. After the gasoline had been in use about ten or fifteen minutes, Stipes was in the grease and washing bay and the other three men were in a huddle in the office-showroom. At this point an explosion occurred and the office was suddenly filled with fire from a height of eighteen inches above the floor. Stipes described it by saying that the "whole room started at once." Absher dove through the glass in the front door and sustained some severe burns. James Mulligan and Perry Corman died in the flames. Stipes was blown ten to twelve feet back from the office door. The station was wholly consumed with the exception of the gasoline in the underground tanks outside the building.

The station had been constructed mainly of concrete block and glass. The office or showroom was rectangular in shape, from twelve to fourteen feet in width and from sixteen to twenty feet in length. The front wall consisted of a solid plate glass window on either side of the front door. A third plate glass window formed one side wall. Three doors led from the office or showroom: the front door, a door into the combined grease bay and wash bay work area, and a door into the otherwise enclosed men's wash room. On the day in question, a mild drizzle was falling, the lights were on in the office-showroom, the doors to the men's wash room and the grease bay area were open, and the big overhead doors in the grease bay and wash bay area were open. Marshall Absher stated in his deposition that before using the gasoline on the floor, he and the other employees felt the iron stove and, finding it cool, stuck their hands inside. He further stated that there was nothing else in the station which could use an open flame and no electric appliances remained in the office or showroom after the furniture was removed except the ceiling lights. He did state that an air compressor was located in a corner in the grease bay next to the office or showroom and that this compressor had an electric motor which would start and stop periodically but that no use had been made of the compressed air supply within the fifteen or twenty minutes preceeding the fire. Neither Absher nor Stipes on deposition were able to say what caused the explosion and fire other than the gasoline fumes nor what spark or flame could have set it off.

■ Although issues of negligence are ordinarily not susceptible to summary adjudication especially in favor of a plaintiff, this general proposition is not without exception. Rogers v. Peabody Coal Co., 342 F.2d 749 (6th Cir.1965); 3 Barron & Holtzoff, Fed.Prac. & Pro. § 1232.1 (Wright ed. 1958). A finding that a defendant has been negligent as a matter of law has given rise to one such exception. See American Airlines, Inc. v. Ulen, 87 U.S.App.D.C. 307, 186 F.2d 529 (1949). Compare Block v. Biddle, 36 F.R.D. 426 (W.D.Pa.1965) (state law considered violation of safety statute as

negligence *per se*), with Gillespie v. Lawton, 234 F.Supp. 821 (D.Conn.1964) (state law considered violation only evidence of negligence).

In force on March 31, 1960 was a body of Kentucky administrative regulations, Standards of Safety, which were promulgated pursuant to the authority delegated in KRS § 227.300 (1955) to the Department of Insurance. These regulations became effective in March of 1955 and continued in force until March of 1963 when they were revised and superceded. One of these regulations in effect on March 31, 1960, section 1412(1) (e) provides in applicable part:

No Class I flammable liquids shall be stored or handled within any service station building except packaged items * * *.

Another section, 1400(2) (f) specifically names gasoline as an example of a Class I flammable liquid. What effect, if any, these regulations should have in the disposition of this action depends upon a determination of their purpose and their effect as laws.

■■■ The Kentucky Court of Appeals has held that administrative regulations have the force and effect of laws when they have been duly promulgated and are consistent with the enabling legislation. Linkous v. Darch, 323 S.W.2d 850 (Ky.1959); Union Light, Heat & Power Co. v. Public Service Comm., 271 S.W.2d 361 (Ky.1954). This court has held that compliance with state administrative regulations is prima facie evidence of absence of negligence. Isbell v. Union Light, Heat & Power Co., 162 F. Supp. 471 (E.D.Ky.1958). The Court of Appeals has assumed for the purpose of argument that violation of such a regulation could constitute negligence *per se*, McKinley v. Danville Motors, Inc., 374 S.W.2d 366, 367 (Ky.1964), but it has never so held. This court sees no reason in decided state law and policy why such regulations, if valid, should be considered differently for these purposes than statutes or municipal ordinances.

■■ If this regulation were a state statute or a valid municipal ordinance, its violation would, if certain conditions were met, be considered negligence *per se*. Louisville Taxicab & Transfer Co. v. Holsclaw Transfer Co., 344 S.W.2d 828 (Ky.1961); Illinois C. R. Co. v. Swift, 233 F.2d 766 (6th Cir.1956); Hinton v. Dixie Ohio Express Co., 188 F.2d 121, 126 (6th Cir.1951) and cases cited therein. In order for the violation of a statute or ordinance to be considered negligence *per se*, the statute or ordinance must be one that was enacted for safety purposes and not just for governmental convenience. Vissman v. Koby, 309 S.W.2d 345 (Ky.1958). The injury sustained must be one that the statute or ordinance was enacted to prevent, Phoenix Amusement Co. v. White, 306 Ky. 361, 208 S.W.2d 64 (1948), and the injury must be sustained by a person or by a property interest which the statute or ordinance contemplated protecting. Buren v. Midwest Industries, Inc., 380 S.W.2d 96 (Ky.1964). Furthermore, the violation of the statute or ordinance must be the proximate cause of the injury sustained before liability will be rested on the violator. Commonwealth v. Ragland Potter Co., 305 S.W.2d 915 (Ky.1957); Murphy v. Homans, 286 Ky. 191, 150 S.W.2d 14 (1940). So construed and limited, the doctrine of negligence *per se* has been applied for many years in Kentucky. See Note, 38 Ky.L.J. 479 (1950); Note, 29 Ky.L.J. 489 (1941). See generally, Restatement (Second), Torts §§ 285–288C (1965).

The defendant has attacked neither the validity of these regulations nor the enabling legislation but it is noted that KRS § 227.300(2) (1955) names flammable liquids and "garages, repair and service shops" as appropriate subjects for regulation. These regulations are to seek the legislative goals of "providing for a reasonable degree of safety for human life against the exigencies of fire and panic, and insuring as far as is practicable against fire loss." KRS § 227.300 (1) (1955). Property owners are di-

rected to furnish and use reasonable safeguards against fire loss and to protect the public and employees from property which has not been made reasonably safe. KRS § 227.400 (1955). Any person who violates any section of the enabling legislation or any of the lawful regulations enacted thereunder is subject to criminal sanction. KRS § 227.990 (1955). An "owner" is defined as "any person who owns, occupies or has charge of any property." KRS § 227.200(4) (1955).

■ From the facts it is apparent that the gasoline which was used to remove the tar on the office and rest room floors was a Class I flammable liquid and that it was "handled" within a service station building without being a packaged item. Calvin Stipes, the "boss" among these employees, comes within the statutory definition of an owner. Thus, this handling of the gasoline was inconsistent with the regulation, section 1412(1) (e) of the Standards of Safety (1955). The court is of the opinion that this regulation had the force and effect of law on the day of the fire and that it set a standard of care which reasonable men would follow. Since the violation of this standard of care constitutes negligence *per se*, the plaintiff's motion for partial summary judgment should be granted on the issue of negligence.

■ The Kentucky Court of Appeals defines the proximate cause of an injury as that which in natural and continuous sequence, unbroken by any independent responsible cause, produces injury. Morris v. Combs' Adm'r., 304 Ky. 187, 200 S.W.2d 281 (1947). It must be such that it induced the injury and without which the accident could not have occurred. Gerebenics v. Gaillard, 338 S.W. 2d 216 (Ky.1960). What constitutes the proximate cause is ordinarily a jury question but, as held in Jewell v. Dell, 284 S.W.2d 92 (Ky.1955), where the uncontradicted evidence is such that only one conclusion can be drawn therefrom, the issue of causation is considered a question of law susceptible for the entry of a directed verdict.

■ In this case depositions have been taken from the two surviving witnesses and they reveal no substantial variance concerning the events leading up to and surrounding the outbreak of this fire. Each of these men stated that a substantial amount of gasoline was brought inside the confined area of the service station office or showroom, that about half of it was poured upon the floor and used there in a scrubbing operation for ten to fifteen minues. Each stated that one of them was forced to leave the room complaining of the fumes from this gasoline and that a fan was sought to stir the air through the station. In addition, one of them stated that the front or outside door to this confined space was closed several minutes before the explosion occurred and that he was forced to dive through the glass in this door in order to save his life. Neither of these two men who were eye witnesses could give an opinion as to what caused this explosion and fire but neither mentioned any person or agency which was not under the direct control or supervision of the manager Stipes or which could in any way be considered as an independent or supervening cause. Similar cases, when confronted with this lack of explicit evidence, have considered the source of the igniting agency immaterial since the negligence created the condition which constituted the fire hazard. Glens Falls Ins. Co. v. Danville Motors Inc., 215 F.Supp. 296 (E.D.Ky.1963), aff'd., 333 F.2d 187 (6th Cir.1964); McKinley v. Danville Motors, Inc., 374 S.W. 2d 366 (Ky.1964); Watson v. Kentucky & Indiana Bridge & Ry., 137 Ky. 619, 126 S.W. 146 (1910). This case is indistinguishable from those cases insofar as the proximate cause issue is concerned. Thus, the plaintiff's motion for partial summary judgment should be sustained on the issue of proximate cause.

■ A partial summary judgment as to the defendant's liability would require this court to rule that the employees Stipes, Absher, Mulligan and Corman were acting as the agents or servants of the defendant Hamilton at the time of

the explosion. Stipes' call to the plaintiff's insured on the morning of the fire raises an issue as to whom Stipes was acting for in removing the floor tiles and this issue is not resolved in the record. The plaintiff's motion for summary judgment on the issue of agency relation between Stipes and the defendant Hamilton should be overruled.

This memorandum is entered in support of an order this day entered.