Ken and Peggy **BOSTIC**, Plaintiffs-Appellants,

v.

**EAST CONSTRUCTION CO.**, Defendant-Appellee.

No. 73–1836.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 12, 1974.

Decided May 31, 1974.

---

Garry L. Edmondson, Covington, Ky., for plaintiffs-appellants; Spalding, Bubenzer & Grause, William I. Bubenzer, Covington, Ky., on brief.

W. Roger Fry, Cincinnati, Ohio, for defendant-appellee; Rendigs, Fry, Kiely & Dennis, William B. O'Neal, Kilcoyne, O'Neal, Meier & Varnau, Cincinnati, Ohio, on brief.

Before CELEBREZZE, PECK and ENGEL, Circuit Judges.

PECK, Circuit Judge.

Plaintiffs-appellants perfected this appeal from a judgment entered on a jury verdict for defendant-appellee in this diversity action for damages arising from destruction of personal property in a fire.

Appellants brought this action against appellee, the builder, part owner and manager of a Florence, Kentucky, apartment building, alleging that appellee's failure to provide fire extinguishers resulted in the destruction by fire of most of their furniture and other belongings because of their inability to extinguish a fire which was accidentally started in their kitchen. The duty to furnish fire extinguishers arose, appellants contend, out of Kentucky statutory law [1] as set out in the Standards of Safety promulgated by the Kentucky Department of Public Safety, Division of Fire Prevention.

---

1. The enabling legislation reads as follows: "(1) The commissioner shall promulgate reasonable rules and regulations based upon good engineering practice and principles as embodied in recognized standards of fire prevention and protection, providing for a reasonable degree of safety for human life against the exigencies of fire and panic, and insuring as far as is practicable against fire loss. Such rules and regulations shall be known as the Standards of Safety.

"(2) In making such rules and regulations the commissioner shall establish minimum fire prevention and protection requirements, including but not limited to requirements for . . . fire extinguishing systems . . . ." K.R.S. § 227.300.

The record establishes that the fire started when a pan full of cooking oil caught fire on the stove in appellants' kitchen on October 26, 1970, while their daughter was preparing french fries. The daughter attempted to quench the flames with baking soda, but was unsuccessful. She then left the apartment in a vain search for a fire extinguisher and to ask a neighbor to notify the fire department. By the time firemen arrived, the apartment had suffered considerable damage.

Three basic facts emerge from the record as being beyond dispute: (1) the daughter's inattentiveness was the primary cause of the fire; (2) there was no fire extinguisher in the three-story, twelve unit apartment building; and (3) appellee did not submit the plans and specifications for the apartment building to the division of Fire Prevention for approval or in any other way directly contact the state with regard to compliance with the Standards of Safety. Also of note, is the fact that appellee obtained all relevant municipal permits and thus presumably met all applicable municipal requirements connected with the construction and occupancy of the building.

Appellants maintained at trial, and continue to argue in this Court, that because appellee failed to comply with its statutory duty, as set out in the Standards of Safety, to submit the plans and specifications for the apartment building here in question to the responsible state agency at the time it was being constructed, and to furnish at least one fire extinguisher on each floor of the building, appellee was guilty of negligence per se. The Kentucky Court of Appeals has repeatedly stated that the violation of a statute or ordinance constitutes negligence per se leaving for determination of the trier of fact the issue of proximate cause and whether the injury was sustained by a person or interest which the statute or ordinance contemplated protecting. Buren v. Midwest Industries, Inc., 380 S.W.2d 96 (Ky. 1964); Louisville Taxicab & Transfer Co. v. Holsclaw Transfer Co., 344 S.W. 2d 828 (Ky.1961); Murphy v. Homans, 286 Ky. 191, 150 S.W.2d 14 (1934). Similar issues have been submitted where plaintiffs have proven violations of administrative regulations that have been duly promulgated and are consistent with the enabling legislation. Home Ins. Co. v. Hamilton, 253 F.Supp. 752 (E.D.Ky.1966) (involving these same Standards of Safety, although not the same sections); see McKinley v. Danville Motors, Inc., 374 S.W.2d 366 (Ky. 1964).

Assuming, arguendo, that the alleged violations were the proximate cause of appellants' injuries and that the Standards were designed to prevent the type of injuries here involved, appellee asserts that the relevant sections of the Standards are so vague and confusing as to be unenforceable and invalid. As such, appellee says, the regulations are an insufficient basis upon which to predicate a claim of negligence per se for an alleged violation thereof. We agree.

The relevant sections of the Standards of Safety are not models of clarity. Appellants introduced the testimony of Edward Eviston, a Deputy Fire Marshall for the Commonwealth of Kentucky, who unequivocally stated that the Standards (Section 101) require that before construction of an apartment building containing over twelve bedrooms, plans must be submitted to and approved by the State Fire Marshall's office. He further asserted that apartment buildings are in a classification (Class I, light hazardous occupancy) which requires a fire extinguisher for every twenty-five hundred square feet of floor area, or as applied to the building in question, three extinguishers. (Section 805 & Appendix A.) On the other hand, appellee called Richard Carr, the building inspector for the City of Florence during the critical time, who testified that he was familiar with the Standards, that they had been adopted by the City of Florence, and that in his opinion the Standards did not require fire extin-

guishers in appellee's apartment building. He also testified that he had inspected and approved the plans for the building, visited the construction site on numerous occasions, and given the final approval needed for occupancy.

Reference to the Standards does not clear up the confusion evidenced by the above witnesses. Section 101 of the Standards reads in pertinent part as follows:

"2(d) State Permits: A permit or license shall be obtained from the Director, Division of Fire Prevention for the following, except that a state permit will not be required under Subparagraphs (2) and (4), where a permit has been obtained from an authorized official in a city or town who has adopted these Standards.

\* \* \* \* \* \*

(2) The construction . . . of any building of a class listed in Subparagraph (b) of Subsection 3, following.

\* \* \* \* \* \*

"(e) Local Permits: In addition to the State Permits required above, local permits shall also be obtained from an authorized city official, where provisions have been made by the municipality for the issuance of permits, and where the municipality has adopted these Standards or has regulations at least as stringent as those of the Fire Marshall, for:

(1) The construction or substantial remodeling of . . . any building of a class listed in Paragraph (b), Subsection 3 of this Section . . . .

\* \* \* \* \* \*

"3(b) Plans and specifications in specific detail and in conformity with good engineering practice shall be submitted to the Director, Division of Fire Prevention, Department of Public Safety . . . and approval received (see State Permits preceding) before construction or substantial remodeling is started for the following.

\* \* \* \* \* \*

(3) A residential building containing more than 12 bedrooms."

When Fire Marshall Eviston was asked to explain where in the Standards they required that an apartment building with more than 12 bedrooms was required to have a certain number of fire extinguishers, he referred to Section 805-9(a), which states that "[f]irst aid fire equipment shall be provided in accordance with the provisions of Appendix A." Appendix A contains a detailed discussion of hand held fire extinguishers and sets out a recommended guideline for determining the number of units which shall be installed under various conditions. Eviston maintained that an apartment building such as appellee's was a "Class I occupancy."[2] Pressed to indicate where an apartment building was described as being within Class I, Eviston replied that apartment buildings are included in the "etc." which follows the NOTE set forth after Class I. The NOTE reads: "This class may include occupancies such office [sic] occupancies, schools (exclusive of trade schools and shops), public buildings, *etc.*" (Emphasis supplied.)

Kentucky's highest court has clearly and unwaiveringly held that "[w]here the lawmaking body, in framing a law, has not expressed its intent intelligibly, or in language that the people upon whom it is designed to operate or whom it affects can understand, or from which the courts can deduce the legislative will, the statute will be declared to be inoperative and void." Folks v. Barren County, 313 Ky. 515, 517, 232 S.W.2d

2. Class I is defined, in Appendix A, as follows: "Light hazard occupancies, in sections of fire-resistive or noncombustible construction where because of a relatively small amount of combustibles, incipient fires of minimum severity may be anticipated. Units [hand held fire extinguishers] shall be so located that a person will not have to travel more than 100 feet from any point to reach the nearest unit but at least one unit of extinguishing capacity shall be required for each 2,500 square feet of floor area or greater part thereof."

1010, 1013 (1950). The rationale behind this clarity requirement is that a law should not be "so vague that the . . . reasonable man cannot intelligently choose in advance which course to follow . . . ." Arlan's Dept. Store of Louisville v. Commonwealth, 369 S. W.2d 9, 13 (Ky.1963); *accord*, Murphy v. Cranfill, 416 S.W.2d 363 (Ky.1967).

 The sections of the Standards of Safety upon which appellants' case depends are indeed vague and unintelligible. It is impossible, due to the numerous cross-references within Section 101, to determine if some sort of state approval is required prior to the construction of an apartment building such as that here involved, or whether local approval is sufficient. As stated heretofore, appellee secured all the necessary local permits and approvals. Further, even the Deputy Fire Marshall could not indicate to the satisfaction of the district judge where in the regulations it states that any particular number of fire extinguishers are required in such a building. Those portions of the standards here involved simply do not possess that degree of clarity necessary for validity, and therefore, do not provide a basis for negligence per se.

The above determination does not dispose of this case, however, as it was submitted to the jury on the issue of common law negligence. In instructing the jury in this regard, the trial judge said,

"Those regulations are regulations and regulations ordinarily have the force of law, but in my judgment these regulations are so obscure and difficult and subject to various interpretations that they do not have the force of law, but they do have the force of being written-down items which anyone dealing with an apartment house such as this has a right to take into consideration and if you feel there was a failure to do that, this damage resulted, then you should find for the plaintiff. If you do not so be-

lieve, then you should find for the defendant."

This was, in our opinion, a correct statement as to the legal effect of the Standards. It being further concluded that under this statement and the entire charge read as a whole, the jury was properly instructed on the issue of common law negligence, and we decline to disturb the judgment entered pursuant to the verdict returned thereunder.

For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed.