9 F.3d 107
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GOLDMAN SERVICES MECHANICAL CONTRACTING, INC.; A & S
Building Systems, Inc.; Power & Telephone Supply
Company, a Tennessee Corporation,
Plaintiffs-Appellants,
v.
CITIZENS BANK AND TRUST COMPANY OF PADUCAH, INC., a Kentucky
Corporation, Defendant-Appellee.
 Nos. 92-5654, 92-5655.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1993.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges; and PECK, Senior Circuit Judge.*
 PECK, Senior Circuit Judge.
 
 
 1
 Appellants in this case were subcontractors on federal construction projects. In each case, the prime contractor defaulted, as did the surety, Purdy Sisson. Appellants sued Appellee Citizens Bank and Trust of Paducah, Inc. (Citizens) alleging that one of its employees had negligently signed a certificate of sufficiency which facilitated Sisson in qualifying as the surety on the payment bonds for the contracts. Appellants also attempted to amend their pleadings to include allegations of fraudulent misrepresentation. The district court granted summary judgment to Citizens on the negligent misrepresentation claims and denied Appellants' motions to amend. For the reasons stated below, we affirm.
 
 FACTS
 
 2
 The Miller Act provides that before any contract in excess of $25,000 is awarded for federal construction projects, the contractor must provide a payment bond with a surety satisfactory to the federal officer awarding the contract "for the protection of all persons supplying material or labor...." 40 U.S.C. Sec. 270a(a). Federal regulations in effect in 1987 required a person wishing to become a Miller Act surety to complete an Affidavit of Individual Surety (SF-28) listing his assets, liabilities, and net worth. On the back of the SF-28 was a Certificate of Sufficiency (Certificate) stating:
 
 
 3
 I Hereby Certify, That the surety named herein is personally known to me; that, in my judgment, said surety is responsible, and qualified to act as such; and that, to the best of my knowledge, the facts stated by said surety in the foregoing affidavit are true.
 
 
 4
 The Certificate required the signature of "an officer of a bank or trust company, a judge or clerk of a court of record, a United States district attorney or commissioner, a postmaster, a collector or deputy collector of internal revenue, or any other officer of the United States acceptable to the department or establishment concerned."
 
 
 5
 Janis Morris was a branch manager and assistant vice president for Citizens. She was acquainted with Sisson through her long-standing banking relationship with Sisson's mother. In March 1987, Sisson asked Morris to sign the Certificate of Sufficiency on an SF-28 he had completed. Sisson gave Morris a certificate of incorporation for Sisson International and Associated Refineries Corporation and an unaudited financial statement for the corporation. The financial report contained a disclaimer that it was based on information supplied by the corporation and was not prepared in accordance with generally accepted auditing standards. The SF-28 indicated that Sisson had assets of $12,168,626,633 and a net worth of $632,571,213. Morris reviewed the financial statement. When deposed, Morris stated that Sisson convinced her that she was not actually certifying to his assets, but was merely attesting that Sisson was a real person. Morris telephoned an individual at Excel Surety who she alleges also advised her that she was merely attesting to Sisson's identity. Morris also consulted with her supervisor who advised Morris that he was not familiar with SF-28s, but that he did not think it would be a good idea to sign them. Although Morris admitted in her deposition that she "was very skeptical" and that she "[didn't] understand this type of financial statement," she signed several of the certificates of sufficiency on the first occasion that Sisson approached her and eventually signed more than twenty of them.
 
 
 6
 Sisson used the SF-28s which Morris had certified to qualify as surety on several federal contracts on which Appellants were subcontractors. Appellants each filed separate actions against Citizens which were later consolidated. After discovery, the parties filed cross-motions for summary judgment. Appellants also filed motions to amend their complaints to allege fraud. In April 1992, the district court granted Citizens' motion for summary judgment and denied Appellants' motions to amend their complaints. This appeal followed.
 
 NEGLIGENCE CLAIMS
 
 7
 We review the district court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 8
 The district court granted summary judgment to Citizens on the negligence claims on the grounds that Appellants had failed to establish essential elements of their negligence claims. As the district court noted, Kentucky case law gives very little guidance with respect to claims of negligent misrepresentation. The district court, noting Kentucky's general adoption of the Restatement in other tort situations, applied Sec. 552 of the Restatement (Second) Torts, Information Negligently Supplied for the Guidance of Others. It provides:
 
 
 9
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 
 
 10
 (2) Except as stated in Subsection (3) [which deals with someone under a public duty to give information], the liability stated in Subsection (1) is limited to loss suffered
 
 
 11
 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 
 
 12
 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 
 
 13
 Under the Restatement view, one who negligently supplies information for the guidance of others is liable to those who incur losses through their justifiable reliance on it. The district court found that Appellants had failed to establish their reliance on the information supplied by Morris. We agree.
 
 
 14
 Appellants have offered no evidence that they saw or had any knowledge of the certificate of sufficiency executed by Morris prior to the default. Appellants argue that they relied on the payment bond on which Sisson was the surety and therefore they were relying indirectly on the SF-28 and the certificate of sufficiency which would have been processed by the Government in approving Sisson as the surety. We agree with the district court that Appellants' theory of causation is too attenuated to be the basis for liability. Because Appellants have failed to offer sufficient evidence to establish the element of reliance on which they would bear the burden of proof at trial, we affirm the district court's grant of summary judgment to Citizens.
 
 
 15
 Appellants also argue that the Miller Act and its implementing regulations establish a duty which Citizens owed Appellants and the breach of such duty constitutes negligence per se. The district court rejected this argument on the grounds that the plain language of the Miller Act did not create a duty of investigation upon a signatory of a certificate of sufficiency. We agree. Furthermore, even though a statute or regulation can supply the standard of care for a negligence action, Grayson Fraternal Order of Eagles v. Claywell, 736 S.W.2d 328 (Ky.1987), under Kentucky law, the regulation must have been enacted for safety purposes and not for governmental convenience to establish a duty element. Home Insurance Co. v. Hamilton, 253 F.Supp. 752, 755 (E.D.Ky.1966). The Miller Act regulations clearly were not enacted for safety purposes. Therefore, we affirm the district court's grant of summary judgment on this issue.
 
 MOTIONS TO AMEND
 
 16
 Fed.R.Civ.P. 15(a) governs amendments to pleadings and provides that after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Denials of leave to amend are reviewed under an abuse of discretion standard. Interroyal Corp. v. Sponseller, 889 F.2d 108 (6th Cir.1989), cert. denied sub nom., 494 U.S. 1091 (1990). The district court may consider several factors in determining whether to allow an amendment including "undue delay in filing, lack of notice to the opposing party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment." Id. at 112.
 
 
 17
 In the present case, the district court determined that the amendment would be futile because Kentucky law requires direct reliance by the plaintiff on the defendant's statements and direct reliance is lacking here. See, Wilson v. Henry, 340 S.W.2d 449, 451 (Ky.App.1960) ("The very essence of actionable fraud or deceit is the belief and reliance upon the statements of the party who seeks to perpetrate the fraud."); Compressed Gas Corp. v. United States Steel Corp., 857 F.2d 346, 352 (6th Cir.1988), cert. denied, 490 U.S. 1006 (1989) ("Kentucky law requires that the party claiming fraud show that he or she relied on the alleged misrepresentation, not a third party.").
 
 
 18
 Appellants cite Restatement Sec. 533 and cases from other jurisdictions as support for their contention that indirect reliance is sufficient to support an allegation of fraud. However, we must apply Kentucky law and from the precedent cited it does not appear that indirect reliance is sufficient to support Appellants' fraud claim as the law now stands. Thus, we cannot say that the district court abused its discretion in denying the motion to amend.
 
 CONCLUSION
 
 19
 For the reasons stated above, we affirm District Judge Edward Johnstone's grant of summary judgment to Citizens on the negligence claims and the district court's denial of the motion to amend to include allegations of fraud.
 
 
 
 *
 This opinion, in which the panel concurred, was authored and circulated by Hon. John W. Peck prior to his untimely death on September 7, 1993